# TYLER TERM, 1897.

### ABE RICH v. THE STATE.

#### 1570. Decided October 13, 1897.

**1. "Bet"—Meaning of.**

A bet or wager is, ordinarily, an agreement between two or more that a sum of money, etc, shall become the property of one or more of them on the happening, in the future, of an event at present uncertain, or upon the ascertainment of a fact in dispute.

**2. Same—When Complete.**

A bet is a wager, and the bet is complete when the offer to bet is accepted.

**3. Betting Upon a Public Election—Construction of Statute.**

Our statute prohibiting betting upon a public election seems only to authorize a conviction where there is an absolute bet made upon the result of a public election.

**4. Same.**

Where the agreement between the parties was, that the amount of the bet was to be $25, which one of them put up, the other putting up, as a forfeit, $5, with the understanding, that if he did not put up the other $20 by 12 o'clock the $5 was to belong to his opponent no matter how the election went, and the remaining $20 was never put up; Held, the contract was an executory agreement which was never consummated, and did not constitute an absolute bet for which a conviction would lie.

**5. Same—Evidence.**

On a trial for betting on the result of a public election between two candidates, the evidence should show whether the election was for city or county officers, or whether a special election; and it should also show the office for which the parties were candidates.

APPEAL from the County Court of Anderson. Tried below before Hon. JOHN F. WATTS, County Judge.

Appeal from a conviction for betting upon the result of a public election; penalty, a fine of $25.

The opinion states the case.

*Thomas B. Greenwood & Son*, for appellant, cited Penal Code, arts. 395, 396; Boston v. State, 5 Texas Crim. App., 383; Temple v. State, 15 Texas Crim. App., 304; Covington v. State, 28 Texas Crim. App., 225.

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of betting on the result of a public election and his punishment assessed at a fine of $25; hence this appeal.

The statement of facts is as follows: Dick Wright testified for the State: "My name is Dick Wright. I know the defendant, Abe Rich. I did not bet with him on the election. I did agree to bet $25 with Abe Rich in Anderson County, Texas, on the result of a public election to be

held in the city of Palestine on the 6th day of April, 1897, and put up $5 of the money, and agreed to put the balance in the stakeholder's hands by 12 o'clock that day, which was one or two days before the election. Abe Rich did offer to bet $25 upon Mr. Bowers. I was in a crowd in which he made the offer, and being a Burkitt man, I did not like to see his offer go unchallenged, though I had found out that Mr. Burkitt was probably going to be beaten, and I was not willing to put $25 up on him; so I agreed to put up $5 as a guaranty that I would take the bet by 12 o'clock, the arrangement being that by putting up the $5 I was to have an option on the bet until 12 o'clock; that is, the bet was to be mine if I put up the other $20 by 12 o'clock, and if I did not, the $5 was to belong to Mr. Rich. The $25 of Mr. Rich and my $5 were put in the hands of Mr. John D. Grigsby with the understanding that if I did not put up the full $25 by 12 o'clock, then he was to pay over the $30 in his hands to Mr. Rich, which he did. The $5 I put up was a sort of security for my taking the bet, and it gave me the preference over all others. The offer by Mr. Rich was an even bet, and he was not offering any odds. The money was turned over to Mr. Rich by Mr. Grigsby before the election was held, and under our arrangement it was Mr. Rich's when I failed to put up the $20, no matter how the election might have gone."

John D. Grigsby testified for the State: "I know the defendant, Abe Rich. He and Dick Wright came to me on the day before the city election and placed $30 in my hands, of which Mr. Rich put up $25 and Mr. Wright $5. They told me that if Mr. Wright did not put up $20 more by 12 o'clock to pay it all over to Mr. Rich. Before 12 o'clock Mr. Wright told me he was not going to put up the $20, and to turn over the $30 to Mr. Rich, which I did. This was before the election, and under my instructions the $30 was to be paid Rich upon Wright's default to put up $20 more, without reference to the election results."

On this statement of facts, appellant presents two questions: First, that there was no actual bet made between the parties appellant and Wright; and second, no venue is shown by the testimony. "A bet or wager is ordinarily an agreement between two or more that a sum of money, or some valuable thing, in contributing which all agree to take part, shall become the property of one or more of them on the happening in the future of an event at the present uncertain, or upon the ascertainment of a fact in dispute. The term is applied both to the contract of betting or wagering and to the thing or sum bet or wagered." 4 Am. and Eng. Enc. Law (new ed.), p. 5. "Betting upon a game is the mutual agreement and tender of a gift of something valuable, which is to belong to the one or to the other of the contracting parties, according to the result of such trial." See Stearnes v. State, 21 Texas, 694, and Long v. State, 22 Texas Crim. App., 194. "The usual signification of 'to bet' is to put to hazard a sum ascertained upon a future happening of some event then uncertain." Martin v. State, 71 Miss., 87; 14 South. Rep., 530. "A bet is a wager, and the betting is complete when the offer to bet is accepted." State v. Welch, 7 Port., 465. Now, the question here pre-

sents itself, did the parties make a completed bet on the result of the election? There is no controversy about the testimony on this point. Both of the witnesses agree, in effect, as to what was done. Rich, the defendant, proposed to bet the witness Dick Wright $25 on the result of a public election to be held in the city of Palestine on the 6th of April, 1897. It seems that Rich offered to bet that Bowers would beat Burkitt. (What office they were running for is not stated.) Wright agreed to take his bet. Defendant put up his money, $25, but Wright put up $5 as a guaranty that he would take the bet by 12 o'clock; the arrangement being that, by putting up $5 he could close the bet by putting up the remaining $20 by 12 o'clock of that day, and if he did not put up the balance, the $5 was forfeited. He did not put up the remainder by the time stipulated, and forfeited the $5, which was paid by the stakeholder over to the defendant. From this we gather that the understanding of the parties was that it should be a cash bet, all the money on both sides to be put up in cash, and the $5 put up by Wright was to be forfeited if he did not put up the remainder. It was so forfeited before the result, and regardless of the result. Under this state of facts, was there a betting between the parties? The bet, when completed, was to be $25. That was to be on a certain result. The putting up of the $5 did not complete the bet. It was not staked on the result of the election, but was to become a forfeit to defendant in case Wright did not put up the balance of the $25; and it was claimed as a forfeit, because the bet was not completed. So that the most that can be said is that there was an executory agreement to make a bet of $25 between the parties, but this was never consummated. The statute does not seem to authorize a conviction on account of such an executory agreement, but only authorizes a conviction where there is an absolute bet made upon the result of a public election. We do not think, under the proof in this case, that such a bet was made between the parties. It is true the parties could have bet without putting up any money at all, but that does not seem to be the character of bet they undertook to make; but it was a cash bet, in which each of the parties should put up a certain amount of money, and one of the parties put up all the money that he was to bet, and the other only put up $5, which, by the terms of the agreement, he was to forfeit if he did not complete the bet.

In the view we have taken above, it is not necessary to discuss the other question raised by the appellant, as to whether or not the venue was sufficiently proved, or the effect of the recent law on that subject (this case having been tried before said law went into effect). We would observe, however, that the proof on this subject is exceedingly meager. Moreover, the evidence fails to show us what the character of the election was. Whether it was for city officers, county officers, or a special election, or its character, or for what office Bowers and Burkitt were candidates. The evidence should have shown these matters.

Because, in our opinion, the evidence does not support the verdict, the judgment is reversed, and the cause remanded.

*Reversed and remanded.*