## Harry Windsor v. The State.

### No. 2945. Decided March 9, 1904.

**1.—Taking Bet on Horse Race.**

Under the act of the Legislature of 1903, pamphlet form p. 68, it is not a violation of the law to offer or tender a bet on a horse race, but the punishment is directed against the party accepting the bet or engaged in accepting or taking the bets.

**2.—Same—Tendering Bet No Offense.**

P. desired to make a bet on a horse race to be run in N. O. and was informed by defendant W. of the terms of the race, whereupon he proposed to defendant that he would pay him as his agent a commission and expense of transmitting ten dollars to parties outside the State of Texas, to be offered on a certain horse that it would win the race; that defendant agreed thereto, and in pursuance of said agreement telegraphed to M., a bookmaker of bets in Hot Springs, Ark., ten dollars, as a bet that a certain horse entered in the race would win, and that M. accepted the bet on terms agreed to and the race was run. Held that defendant was not guilty of taking or accepting the bet under the statute.

Appeal from the County Court of Grayson. Tried below before Hon. G. P. Webb.

Appeal from a conviction that appellant unlawfully accepted a bet on a horse race; penalty, a fine of $200 and thirty days imprisonment in the county jail.

The opinion states the case.

*Cecil Smith, W. A. Hanger, Newton & Ward,* and *Wm. P. Ellison,* for appellant.—(a) Under the agreed statement it clearly appears that Harry Windsor did not violate any law of this State, and that the acts committed by him, did not constitute any offense known to the law.

(b) Where a person residing in Texas sends money to another State, accompanied by an offer to bet on a horse race, and such offer is accepted in such other State, the person so offering does not violate any law of this State.

(c) Where a person, acting for another, and for a compensation, telegraphs money from Texas to another State, accompanied by an offer to bet on a horse race, and such offer is accepted in such other State, and the person so transmitting the money has no interest in the bet, he does not "engage or assist in taking or accepting a bet on any horse race." Rich v. State, 38 Texas Crim. Rep., 199; State v. Welsh, 7 Porter (Ala.), 463; Woodcock v. McQueen, 11 Ind., 14; Harris v. Wight, 81 N. Y., p. 532; 4 Am. and Eng. Enc. of Law, 2 ed., pp. 5, 6, and notes; Lescallett v. Com., 89 Va., 878, 17 S. E. Rep., 546.

Now, this distinguishing between the essential element of a bet and the recognition of the fact that it is necessary to have at least one who offers and one who accepts, is made clear in the Lescallett case, above cited. In fact, all of the authorities regard a bet as but another form of contract, and like all contracts, contemplate first an offer, and then an acceptance. 2 Wharton on Contracts, sec. 449; Shumate v. Com., 15

Gratton (Va.), 653. "A bet or a wager is ordinarily an agreement between two or more, etc. The term is applied to the contract of betting or wagering, etc." 4 Am. and Eng. Enc. of Law, 2 ed., p. 5; Bishop on Contracts, secs. 321-328.

We do not pretend to say or to argue that the Legislature could not, as was done in Connecticut, pass a statute prohibiting any person in Texas from transmitting beyond the limits of the State money to be bet on horse races (State v. Harbourne, 70 Conn., 484), but if it be competent for the Legislature to do as was done in the States last above mentioned, our reply is that it has not done so.

Under all decisions and according to all text books and on the most elementary propositions of law, a bet is a consummated contract. In Rich v. State, this court has held that "bet and wager are synonymous," and this is in accordance with the definition to be found not only in the dictionaries but in most of the authorities. In all events it is an element in law that there is no bet or wager until at least two parties have agreed to bet. Under all decisions a bet, like any other contract, is made, entered into, or consummated at the place where the minds of the parties meet (see Lescallett case, above), and by well established principles of law, too well fixed to be shaken, if A makes an offer to B by post or by telegram, under circumstances indicating that the post or telegraph company is to transmit the reply, A constitutes the post or telegraph company his agent, and the moment B accepts by dropping a letter in the postoffice or by delivering a telegram to the telegraph company, he then and there at that place closes the contract, and then and there at that place the contract is made. Blake Co. v. Hamburg Ins. Co., 67 Texas, 160.

"When, however, the postoffice and the telegraph company are the usual modes of doing business, and when by local law or local usage, an acceptance posted or telegraphed is regarded as adequately communicated, then, in all cases in which a proposal does not designate the mode of acceptance, it may be regarded as implying that the acceptance will be good if sent by post or telegraph." 1 Wharton on Contracts, sec. 19.

"So far as concerns the mode in which the express obligation is to be construed and in which it is to be approved, the place from which the acceptance is sent is that which supplies the governing law; it is at this place that the purpose of the parties for the first time coalesce. * * * In each of these cases the place where one party assents to the other's proposition is the place of the contract, so far as the particular transaction between the two parties is concerned." 1 Wharton on Contracts, sec. 20.

*Howard Martin.* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—The information charges that appellant "did then and there unlawfully engage and assist in taking and

accepting from Max Price a bet of ten dolars on a horse race to be thereafter run on the tenth day of December, 1903, in the State of Louisiana," etc. The facts are that "Max Price desired to make a bet on a horse race to be run in the city of New Orleans, State of Louisiana, and being then and there informed by defendant, Harry Windsor, of the various odds offered at the race track on the said day on the various horses entered in a certain race to be run on the race track in the city of New Orleans and State of Louisiana, proposed to the said Harry Windsor, defendant, that he, the said Max Price, would pay to him, the said Harry Windsor, a commission of $1 together with the expense of transmitting by telegraph to any parties beyond the State of Texas, the sum of $10 by the said Harry Windsor, defendant, as the agent for the said Max Price—but not the agent of Lee Mayer—to be offered upon the horse Big Ben, that the said horse would win the race on the said date to be so run at the race track in the city of New Orleans and State of Louisiana, in which race the said horse was entered. That Lee Mayer is engaged in the business of bookmaking and of taking and of accepting bets on horse races to be run on the various race tracks throughout the United States; that the place of business of the said Lee Mayer is Hot Springs, State of Arkansas. That thereupon the said Harry Windsor, in Grayson County, Texas, did agree with the said Max Price to then and there, on the 10th day of December, accept and did accept from the said Max Price a deposit of $10, together with a commission of $1 and the expense of transmitting said $10 by telegraph to the said Lee Mayer, and in pursuance of said agreement, did on behalf of the said Max Price and for his account telegraph to the said Lee Mayer the sum of $10, and offered the same to the said Lee Mayer as a bet that the horse Big Ben would win the race to be run on the said day in the city of New Orleans and State of Louisiana, in which the said horse was then and there entered." It is further agreed that the race was run as indicated, and that Lee Mayer accepted by telegraph message the bet sent him by appellant; and that after the acceptance of said bet, the race was run. It was further agreed that the "odds" bet were even; that is, $10 against $10; and that Lee Mayer accepted the bet on those terms.

This information is predicated upon section 1 of the Acts of the Legislature, 1903, page 68, which reads as follows: "If any person shall engage or assist in pool selling, book making, taking or accepting any bet on any horse race, he shall be punished by a fine of not less than $200 nor more than $500 and imprisonment in the county jail for not less than thirty nor more than ninety days." Sections 2 and 3 are not involved in this case. The information is clear and explicit, alleging that appellant engaged in taking and accepting a bet on a horse race, etc., and that this engaging in the taking and accepting the bet was from Max Price. He was not charged with pool selling or book making; nor was he charged with buying or wagering or making a bet on a horse

race.  It is agreed in the statement of facts that appellant was the agent of Max Price, and as his agent sent and tendered a bet to Lee Mayer in Hot Springs, Arkansas.  It is further distinctly agreed that he was not the agent of Lee Mayer.  Lee Mayer did not tender a bet to Max Price or to appellant.  The tender or offer of the bet was made by Harry Windsor for Max Price to Lee Mayer.  In other words, it was an offer of Max Price through appellant to Lee Mayer in Arkansas to bet on the horse named Big Ben, to be run on a certain day in New Orleans.  It may be conceded that there was a bet made between Max Price, through his agent, the appellant, with Lee Mayer in Arkansas.  Now, it is said that "a bet or wager is ordinarily an agreement between two or more that a sum of money, or some valuable thing, in contributing which all agree to take part, shall become the property of one or more of them on the happening in the future of an event at the present uncertain, or upon the ascertainment of a fact in dispute.  The term is applied both to the contract of betting or wagering and to the thing or sum bet or wagered.  4 Am. and Eng. Enc. of Law, 2 ed., p. 5; Rich v. State, 38 Texas Crim. Rep., 199.  "A bet is a wager, and the betting is complete when the offer to bet is accepted."  State v. Welch, 7 Port., 465; Rich v. State, supra.  Now, the facts show beyond any question that there was a bet made; that the tender of the bet was made by appellant for Price and accepted by Mayer, to whom it was tendered.  In order to constitute the bet, there must be a tender or an offer to bet by one party and the acceptance by the other.  In this case the offer was made by appellant as the agent of Price, and the acceptor was Mayer.  The party who tenders the bet is not the party to accept the bet; it is the party to whom the tender is made who is the acceptor.  So, under the facts, instead of appellant engaging in taking the bet or accepting the bet, or assisting in taking or accepting a bet, he was the party tendering or offering the bet, and Mayer was the taker or acceptor.  The agreed facts do not show a violation of this statute.  Not only so, but excludes that idea.  In other words, it shows appellant was the party who offered and not the party who accepted the bet.  The Legislature has not seen proper to include in this section those who offer or tender bets, but has confined it to those who engage in taking or accepting bets.  It would seem from the wording of the statute that it is not a violation of the law to offer or tender a bet.  The punishment is against the party accepting the bet or engaged in accepting or taking the bets.  We have many statutes enacted along the same line.  Our laws against the selling of intoxicants punishes the seller and not the purchaser.  It will be noted appellant was not charged with making a bet.  It may be that where the bet is offered or tendered and is accepted that that would be the consummated bet; or in other words, it would be making the bet.  But appellant was not charged with making a bet, and that issue will not be discussed.  It

is not involved. Because the evidence does not show a violation of the statute, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Brooks, Judge, dissents.