## WILLIAM WILSON ET AL.
### v.
## PHILIP CONLIN.

GAMING—NOTE GIVEN FOR ENTRANCE FEE.—The offer by an association of a purse of $600, divided into four parts, to be given to the winning horses in a race to be run under the rules of the association, is not within the statute prohibiting gaming, any more than the offer of a premium at an agricultural fair ; and a note given for the entrance fee for one of the competing horses is not void under the statute as being a gaming contract.

APPEAL from the Circuit Court of LaSalle county; the Hon. JOSIAH McROBERTS, Judge, presiding. Opinion filed May 2, 1879.

Mr. L. W. BREWER, for appellants; as to what constitutes gaming within the meaning of the statute, cited Tatman v. Strader, 23 Ill. 495.

As to the difference between an offered premium and a bet: Applegarth v. Colley, 10 Mees. & Wels. 723; Smith v. Alvord, Marion Co. Ind. Superior Ct, (unreported).

Messrs. DUNCAN & O'CONOR, for appellee; that this was a gaming contract within the meaning of the statute, cited Mosher v. Griffin, 51 Ill. 184.

SIBLEY, J. The facts agreed on in this case are, that the Earlville Park Association offered a purse of $600, divided into four parts, to be given to the winning horses, according to their degree of speed in a three minutes race, to be run under certain regulations imposed by the Association.

One of its rules required all persons desiring to enter horses to compete for the prize, to pay an entrance fee equal to ten per cent. on the whole sum to be given.

Appellee was permitted by the association to enter his horse "La Salle," to participate in the race for the purpose of winning the purse. In consideration of that permission he executed to the treasurer of the society his promissory note, as follows:

" $60.00                LA SALLE, August 18th, 1873.

" Eight months after date, I promise to pay to the order Chas. M. Smith, Esq., Treas. sixty dollars at his office, value received, with interest at 10 per cent. per annum.

PHILIP CONLIN."

This note was endorsed *bona fide* to the appellants before it became due, for a valuable consideration paid by them.

Conlin having failed to win the prize or any portion of it, refused to pay the note. Suit was instituted before a justice of the peace to recover the amount of it, and the cause taken to the Circuit Court of LaSalle county, where a judgment was rendered in his favor, from which the plaintiffs appealed to this court.

The only question to be determined, is whether the note was taken in violation of the statute of 1845 then in force, which reads that " all promises, notes, bills, bonds, covenants, contracts, agreements, judgments, mortgages or other securities, or conveyances made, given, granted, drawn, or entered into, or executed by any person or persons whosoever, where the whole or any part of the consideration thereof shall be for any money, property or other valuable thing won by any gaming or playing at cards, dice or any other game or games, or by betting on the side or hands of any person gaming, or for the reimbursing or paying any money or property knowingly lent or advanced at the time and place of such play, to any person so gaming or betting, or that shall during such play so play or bet, shall be void and of no effect."

If this was a gaming transaction within the meaning of the statute, then the note was void, and the decision of the Circuit Court correct.

Gaming is usually defined to be an act done by which something is hazarded on the event of a contest or issue.

Wilson et al. v. Conlin.

The association certainly did not hazard anything by merely receiving an entrance fee. Nor could the simple offer of a premium to the swiftest horse be converted into a stake that in anywise depended upon the result of the race. If so, a prize offered for the finest animal, the handsomest baby, or the greatest production of intellectual effort, would render the offerer liable to the penalties of the statute. Such a construction must tend to discourage all rivalry in art, in science, in the products of the soil, and the improvement in the various breeds known to the animal kingdom. This construction could not have been intended by the legislature. To require a fee in advance for the privilege of being admitted to contest the prize, is no more a gambling process than the offer of a prize to the successful party. There is nothing staked upon the result of a future contingency. The amount to be paid is fixed, and not in any event to be returned, increased or diminished. The law does not prohibit the trial of speed any more than the trial of strength in an animal. Moreover, the party who might pay the entrance fee was under no obligation to engage in the race. How could the association know his object in procuring a right of entry—whether it was merely for the purpose of exhibiting the animal on the ground, or put him to a trial of speed? It simply demanded a fee before the horse could enter, and left the owner to determine what course he would afterwards pursue; or even whether he would avail at all of the privilege purchased was a matter in which the association had no concern. On the payment of the entrance fee, or the execution of a note taken in lieu of the money, the whole business was completed, and nothing left depending upon the happening of an event or the trial of an issue. The prize money was to be paid to the successful party, but the amount was certain, and did not depend at all on the number of entrances. Therefore the entrance fee had no direct connection with the payment of the prize money.

It was decided in Applegarth v. Calley, 10 Mees. & Wels. 723, that a sum of money advanced by a third person as a premium to encourage horse-racing was not a wager, and the deposit could be recovered in a suit by the successful party.

The association in this case was not in the strict sense of the word a party engaged in the racing. It had no horse entered for that purpose, and none was run or proposed to be run on its account. Therefore being entirely indifferent as to the result, it occupied the position of a third party to those engaged in running their horses. It is said in Smith v. Alvord, a case decided by the Marion Superior Court, Ind., furnished by counsel of appellants, that "The distinction between the offering a premium by a third person to the successful one of several contestants and a bet between such contestants, is obvious. In the former case, the person who offers the premium stakes nothing. In other words, his liability to pay does not depend upon any contingency. He binds himself absolutely to pay to one or the other of the contestants a certain amount, no matter how the contest may be decided. Although it may be uncertain to whom he will have it to pay, it is certain he will have it to pay to one or the other. There is nothing illegal in this, so long as the contest for which the premium is offered is not in itself unlawful." This case has recently been affirmed by the Supreme Court of the State of Indiana, and not yet reported.

The case instanced by counsel for appellee of the game of keno, where a number of persons each pay into the banker a given sum of money, the amount to be won back by any of them being dependent upon the vagaries of the machinery operated by the banker, presents, it is believed (although we are unacquainted with the game), quite a different case from the one before us. So in respect to that of a given number of persons desiring to organize a horse-race, each one to stake a certain amount, and if one of them were to execute a note to the stakeholder for his stake, could the stakeholder recover in an action upon the note? It may be answered that if the stake were so placed for the purpose of being transferred upon the happening of a future contingency, the arrangement would contain one of the main ingredients of gaming. Indeed, the very idea of stakeholder implies one who holds a deposit to be disposed of according to the result of a future occurrence, which doubtless comes within the provision of the statute.

The case of Mosher v. Griffin et al. 51 Ill. 184, the only one

referred to by appellee as opposed to the view here expressed arose on a claim made by the plaintiff for services rendered in fitting a mare for a race on which money had been bet, and also the board and shoeing of the animal. The court said that the training of the mare " we suppose was for the purpose of gaming," and yet reversed the cause for the reason that the court below refused to allow the plaintiff his claim for board and shoeing. A distinction more refined than that we have attempted to draw between the Earlville Park Association in receiving an entrance fee and offering a reward to the successful horse, and a person betting on the result of the race to be run.

For the reasons indicated the judgment of the Circuit Court is reversed and the cause remanded.

Judgment reversed.