57    481
134   220

DELIER v. THE PLYMOUTH COUNTY AGRICULTURAL SOCIETY.

1 **Agricultural Fair**: HORSE-RACING: PREMIUMS. A county agricultural society has the power, under section 1109, Code, to offer a premium to the winner at a horse-race, or trial of speed, to be held on its grounds during its annual fair.

2. ——: ——: ——. Section 1114, Code, does not prohibit trials of speed or horse-racing, when under the control of the society, and as a means for improving the stock of horses.

3. ——: GAMBLING: PUBLIC POLICY. The offering of a premium is not a bet or wager, and is not within the provisions of section 4028, Code, nor is it against public policy.

4. ——: PREMIUM: WHO ENTITLED TO. Where a party has control of a horse and enters him for the race in accordance with the rules of the society, paying the entry fee, he is entitled to the premium if earned.

5. ——: ——: NOTICE AND PROTEST. The notice and protest to the officers of the society by the plaintiff, as to the disqualifications of the horse making the best time, were sufficient to estop the society from paying the premium to its owner.

*Appeal from Plymouth Circuit Court.*

SATURDAY, DECEMBER 17.

THE petition states the defendant has the power, and under the statute holds fairs, and that in October, 1880, one of such

fairs was held, and as "an inducement to owners and persons having charge of horses to attend and enter their animals, the said defendant issued printed offers of premiums, among which offers was one of $50, first money for the best three in five, free for all trotting, and was open to all horses owned in the county of Plymouth, Iowa, and not otherwise." * * * That at said time the plaintiff had in his charge a trotting mare owned by ——— Cameron, then residing in said county, * * which mare was entered by plaintiff for the said race above referred to, in accordance with the rules of the defendant society, he paying the required entry fee, and thereby becoming entitled to participation in the race;" that among the horses so entered was one owned from Woodbury county, which horse "made the fastest time, and the horse in charge of and entered by plaintiff made the next best time; that after and before said race the plaintiff notified the proper officers of said fair, to-wit, the officers of defendant, "that the Woodbury county horse was not entitled to contest for the premium offered, and after said race the said plaintiff entered with the secretary of defendant his oral protest against the owner of the Woodbury county horse being paid the said award * * upon the ground that he * * was, and had been, a resident of Woodbury county." Notwithstanding which the premium was paid to the owner of the last named horse. There was a demurrer to the petition which was overruled, and defendant appeals.

*Argo & Kelly*, for appellant.

*I. S. Struble*, for appellee.

SEEVERS, J.—I. As contemplated by statute, in cases where the amount in controversy is less than one hundred dollars,

1. AGRICUL- certain questions have been certified upon which
TURAL fair:
horse-rac- it is said to be desirable to have the opinion
ing: premi-
ums. of the Supreme Court, among which are the fol

lowing:

"1. Does section 1114 of the Code of 1873 prohibit horse-racing at county agricultural society fairs, and on its grounds, such as is contemplated by the petition in this case?

"2. Is an agreement, such as is alleged in the petition, made by such society with the owner of a trotting horse, whereby said society promises to pay a sum of money to the winner of the race, against public policy?"

"3. Can the plaintiff maintain an action for the recovery of money won on such race, as is contemplated and described in said petition?"

It is provided by statute: "All county agricultural societies shall annually offer and award premiums for the improvement of stock, tillage, crops, implements, mechanical fabrics, articles of domestic industry, and such other articles and improvements as they may deem proper. And they shall so regulate the amount of premiums and the different grade sof the same, that small as well as large farmers and artisans may compete therefor." Code, § 1109.

It is insisted this section does not confer upon agricultural societies the power to "offer a premium to the winner at a horse-race to be held on its grounds during the continuance of its annual fair." It is made the duty of such societies to "offer and award premiums for the improvement of stock." That an improvement in the size, strength, and capacity of horses is desirable there can be no doubt. Why not also in speed? Counsel practically concedes this is so but say such an improvement is less desirable than "weight, strength, style, and tractability." This may be true, but why should "style" be regarded as a more desirable improvement than speed. However this may be, the defendant, we think, had the power to determine that to increase the speed of horses was a desirable improvement. The means by which this was to be accomplished is discretionary. That is, the society must determine in what way the desired result can be best reached. Should it be thought best to offer a preminm for a trial of strength,

the society has the power to do so.    It follows, we think, a premium may be offered for a trial of speed.    It matters not what it may be called, unless it is prohibited by statute, or is contrary to public policy.

But it is said that no one but farmers and artisans can compete for the premiums.    This we do not think is the proper constuction of the statute.    The premiums and grades are to be so arranged that all farmers and artisans may compete therefor.    But other persons are not prohibited from competing, and we think the object of the statute is to encourage development and progress, and that competition is open to all persons instead of being confined to a class or classes.

Section 1114 of the Code is as follows:    "No person shall be permitted to sell any intoxicating liquors, wine, or beer of any kind, or be engaged in any gambling or horse-racing, either inside the enclosure where any county or district [or State] agricultural society fair is being held, or within one hundred and sixty rods thereof, during the time of holding such fair; and any person found guilty of any offense herein enumerated shall be fined in a sum not less than five nor more than fifty dollars for every such offense.

This section does not in terms prohibit the society from allowing trials of speed or horse-racing as a means of improving the stock of horses.    The word person may include corporations.    Code, § 45.    But in order to ascertain the meaning of the statute under consideration, it must be read and construed in connection with section 1109 of the Code, before quoted.    We have seen that under the last section agricultural societies have the power to offer and award premiums for the improvement of the speed of horses, and as a means to this end they may allow horse-racing.    This being so, we do not think the prohibition in this respect in section 1114 applies to races for the purpose aforesaid, when controlled by the society.    It seems to us if the General Assembly had intended to prevent such societies from offering premiums for

the fastest horse to be tested by a race, it would have so said in language that could not be misunderstood.

Gambling, or the making of any bet or wager, is prohibited by statute, Code, § 4028; but horse-racing is not, except on a public highway. Code, § 4071. The offering of a premium is not a bet or wager. "In a wager or bet there must be two parties, and it is known before the chance or uncertain event upon which it is laid is accomplished, who are the parties who must lose or win. In a premium or award, there is but one party until the act, thing or purpose for which it has been offered has been accomplished. A premium is an award or recompense for some act to be done. A wager is a stake upon an uncertain event." *Alvord v. Smith*, 63 Ind., 58; *Hams et al. v. White*, 81 N. Y., 532. The only case coming under our notice which apparently holds otherwise is *Bronson Agricultural and Breeders Association v. Ramsdell*, 24 Mich., 441. In that State, however, there was a statute prohibiting "all running, trotting or pacing of horses　*　*　*　for any bet　*　*　*　or award," and it was made a penal offense to contribute or collect any "money, goods or things in action for the purpose of making up a purse, plate, or other valuable thing to be raced for　*　*　contrary to law." This statute is much broader than ours and therefore the cited case is not applicable.

*3. ———: gambling: public policy.*

From what has been said it is apparent the transaction set forth in the petition is not contrary to public policy.

The two first questions must be answered in the negative, and the third in the affirmative.

II. The fourth question is as follows. "Do the facts stated in the petition show the plaintiff to be the real party in interest and entited to sue for the money in question in this case?" The plaintiff had charge of and entered the mare for the race. He paid the entry fee and thereby became entitled to the premium if earned. This question must be answered in the affirmative.

*4. ———: premium: who entitled to.*

III. The fifth is as follows. "Is notice and protest given by plaintiff to the officers of the defendant, as set forth in the

5. ——: ——: petition, sufficient to estop the defendant from pay-
notice and
protest. ing (the money offered to the winner) to the owner of the horse called Woodbury Chief, or otherwise incur a liability to the plaintiff?"

The averment in the petition is in effect the same as if it had been stated that notice was given to the defendant.

This on demurrer would have been clearly sufficient. It is possible that on motion the plaintiff would have been compelled to state to what officer or person the notice was given.

This question must be answered in the affirmative.

AFFIRMED.