PORTER, Respondent, vs. DAY and others, Appellants.

*February 29 — March 27, 1888.*

*Gaming contracts: Horse racing: Premiums: Exclusion of horse from race: Discretion: Fraud.*

1. The mere racing of horses is not illegal or against public policy; and where a premium or reward is offered by a third party, in good faith and not as a cover for betting, to the winner in such a race, the latter may recover the premium even though he paid an entrance fee which went to make up in part such premium.
2. Where the judges of a horse race had discretionary power to exclude a horse violating a certain rule from further participation in the race, their decision allowing the horse to proceed after a violation should not be set aside except upon clear proof of fraud affecting such decision.

APPEAL from the Circuit Court for *Eau Claire* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

This action was brought to recover a purse offered by the defendants, as the president, secretary, treasurer, and manager of the Eau Claire Driving Park Association, an unin-

corporated society.   The material allegations of the complaint are the following:

"That the said defendants, on or about the 22d day of September, 1885, promised the said plaintiff to pay the said plaintiff on the 24th day of September, 1885, the sum of $150, in consideration that and upon condition that the said plaintiff would pay the said defendants, or the said defendant *Putnam*, the sum of $30, called an 'entrance fee,' and would on the day last named, at an hour to be appointed by defendants, drive or cause to be driven over the race-track under the control of the said defendants, for the entertainment of the persons admitted thereto by the defendants upon payment to the said defendants of the admission price above mentioned, and of such other persons as the said defendants should choose to admit, the said plaintiff's horse, known as Sorrel George, in such manner and at such speed as to outstrip certain other horses driven in competition with the plaintiff's said horse over the said race-track at the same time, and to win, according to the decision of the three arbitrators or judges, so called, designated by the said defendants, a race described as a race of the 2:40 class. That thereupon the plaintiff paid the said defendant *Putnam*, as secretary of said Eau Claire Driving Park Association, the sum of $30, called an 'entrance fee,' and on the 24th day of September, 1885, at an hour appointed by defendants, caused to be driven over the race-track under the control of the defendants, for the entertainment of the persons admitted thereto by the said defendants, the said plaintiff's horse known as Sorrel George, in such manner and at such speed as to outstrip all other horses driven in competition with the plaintiff's said horse over the said race-track at the same time, and to win, according to the decision of the three arbitrators or judges, so-called, designated by the said defendants, a race described as a race of the 2:40 class, and duly performed all the conditions on his

part, whereby the said defendants became indebted to the plaintiff in the sum of $150. . That the said defendants have not, nor has any of them, paid the said plaintiff the said sum of $150, or any part of it." The complaint demands judgment for the sum of $150, with interest and costs.

The answer, among other things, admits " that the Eau Claire Driving Park Association offered to pay the owner of the horse who should win the 2:40 class race at the September meeting, when trotted under the rules of the National Association, the sum of $150, if such rules were in all respects complied with, and towards which sum the owner should contribute the sum of $30," and "that the plaintiff entered his said horse to compete in said race and for said stake and wager, and paid the said association the sum of $30 towards said stake." The answer then alleges that the plaintiff did not comply with the rules and regulations governing said race; " that his horse paced instead of trotted; " and that he " could not have won such race had he trotted instead of paced." And further alleges that the plaintiff obtained the decision of the judges of the race in his favor by fraudulently representing to them that his horse trotted when he well knew that he paced.

On the trial it was admitted that the plaintiff's horse won the race, and the only question on that part of the case was whether he won it fairly. At the close of the evidence the learned circuit judge directed a verdict for the plaintiff, and the defendants duly excepted. From the judgment entered in favor of the plaintiff, the defendants appeal to this court.

*W. F. Bailey*, for the appellants, contended, *inter alia,* that the contract was void as against public policy. Most of the states, including Michigan and New York, have specific statutes in regard to horse racing. Our statute (sec. 4538, R. S.) is general, but comprehensive enough to include what is prohibited by the statutes of the other states. See

*Bronson A. & B. Ass'n v. Ramsdell*, 24 Mich. 441; *Hall v. Bergen*, 19 Barb. 122. The exception of contracts of insurance from the provisions of the section shows that the legislature considered contracts of this nature unlawful upon principle. If racing for premiums and purses was lawful, sec. 1779, R. S., authorizing certain corporations to offer such premiums, was wholly unnecessary. Purses made up in this way are in violation of the law and of the policy of the law relating to lotteries.

*V. W. James*, for the respondent.

TAYLOR, J. There were but two questions discussed by the learned counsel on the hearing of this appeal, viz.: (1) Was the contract set out in the complaint an illegal contract and void either at common law or under the statutes of this state? (2) Was there sufficient evidence of fraud on the part of the plaintiff to avoid the decision of the judges in his favor at the time the race was completed?

That the mere trotting or racing of horses, when done in a proper manner and not in the public streets or highways, is not an illegal act at common law, is well settled by the authorities, and it is equally well settled that betting on the result of a horse-race was not illegal at common law. See the following authorities: *Da Costa v. Jones*, Cowp. 729; *Good v. Elliott*, 3 Term, 693; *M'Allester v. Haden*, 2 Camp. 438; *Blaxton v. Pye*, 2 Wils. 309; *Gibbons v. Gouverneur*, 1 Denio, 170; *Van Valkenburgh v. Torrey*, 7 Cow. 252; *Bunn v. Riker*, 4 Johns. 426; *Campbell v. Richardson*, 10 Johns. 406. By the statutes of this state, trotting or racing horses is not declared illegal. It is only "betting and wagering upon a horse or other race" which is declared to be illegal. See secs. 4532, 4536, 4538, R. S. 1878. The only question on the first point made is whether competing for a reward, purse, or stake offered by a third party to one whose horse shall win in a running or trotting race, is illegal. It seems to us

this question must be answered in the negative. As stated above, the mere racing or trotting of horses, when conducted in a proper place and in a proper manner, is not an illegal act. Offering a reward or premium to the successful competitor in such a race or trot is therefore just as lawful as the offering a reward for competing in any other lawful business. If the mere offering a premium or reward to the competitors in a lawful transaction is a violation of the laws against gaming and betting, then all the premiums offered by our state and county agricultural societies would be a violation of that law.

The fact that the parties competing for the reward or premium offered are required to pay something in the way of an entrance fee before they are allowed to compete does not make the transaction a betting or gaming transaction. All competitors for premiums in these societies are required to pay an entrance fee, and these entrance fees go to make up in part the premiums offered to the competitors. It is only when it is shown that the offering a reward or premium to the competitors is a mere subterfuge for betting and gaming on a horse-race or any uncertain event, that it comes under the law prohibiting betting and gaming. If two or more men owning trotting horses should contribute equally or otherwise a sum of money, and put it into the hands of some other person for the purpose of offering it as a premium or reward to them only, and to the owner of the horse who should win the race, such a transaction would undoubtedly come within the rule which prohibits betting on a horse or other race; and it was so held in the case of *Gibbons v. Gouverneur, supra.* Where there is no claim that the competitors are the sole contributors to the premium or purse which is offered to them as competitors, we are unable to find any decided case which holds that the competing for such purse or premium is illegal or prohibited, unless the same be expressly prohibited by the laws of the

state in which such rewards are offered. On the other hand, in those states where the legality of offering rewards or premiums has been considered, and where they are not expressly prohibited by law, the courts have uniformly held the transaction a lawful one, and that it is not within the prohibition against betting and gaming. *Harris v. White*, 81 N. Y. 532; *Misner v. Knapp*, 13 Oreg. 135; *Delier v. Plymouth Co. Agr. Soc.* 57 Iowa, 481; *Alvord v. Smith*, 63 Ind. 58.

In *Harris v. White, supra*, the court state the difference between betting and gaming, and offering purses or premiums, as follows: "A bet or wager is ordinarily an agreement between two or more that a sum of money or some valuable thing, in contributing which all agreeing take part, shall become the property of one or some of them on the happening in the future of an event at the present uncertain, and the stake is the money or thing thus put upon the chance. There is in them this element that does not enter into a modern purse or premium, viz., that each party to the former gets a chance of gain from others, and takes a risk of his own to them. . . . A purse or premium is ordinarily some valuable thing, offered by a person for the doing of something by others, into the strife for which he does not enter. He has not a chance of gaining the thing offered; and if he abide by his offer, that he must lose it and give it over to some of those contending for it is reasonably certain." This is perhaps as good a statement of the difference between a bet and a premium or prize as can be given. And when a purse or prize is offered in good faith to the winner in a competitive contest, which contest is not unlawful in itself, the transaction is a lawful one, and the person offering the prize or premium will be held liable in the law to make good his offer to the winner. This appears to be the rule in all states where the statutes do not forbid the offering of such rewards or premiums. In the state of Michigan the law prohibits the offering of such rewards or

premiums in certain cases, and it is therefore held that a person competing for and winning such reward in a case prohibited by law cannot recover the same in an action at law. See *Bronson A. & B. Ass'n v. Ramsdell*, 24 Mich. 441–443.

That the speeding of horses is not illegal or against public policy in this state is evident from the fact that the legislature expressly authorizes it to be done by certain corporate bodies. Sec. 1779, R. S. It is not to be presumed that the legislature would authorize corporate bodies to do that which was against the public policy of the state. We must hold therefore that the mere racing of horses is not illegal or against public policy, and the offering of a premium or reward to those competing in such races, when such rewards or premiums are not a mere cover or disguise for betting on such races, is not illegal.

Upon the other point, we think with the learned circuit judge that the evidence entirely fails to make a case for setting aside the decision of the judges made at the time in favor of the plaintiff. The evidence discloses the fact that the plaintiff's horse fairly won three of the five heats, and the only doubt raised as to the right of the plaintiff to the money is that in the third heat, when the plaintiff's horse did not win, the horse was so managed by his driver that he violated the rules governing the race and should have been excluded from further competition for the reward.. There is nothing in the evidence, taken most strongly against the plaintiff, which, by the rules governing the race, made it the imperative duty of the judges to exclude the plaintiff's horse from further competition; and their decision made at the time, permitting him to continue in the race, cannot now be overruled in order to give the reward to some other competitor, except by showing a clear case of fraud on his part.

It is very clearly shown that in the third heat the plaint-

iff's horse paced most of the way, but that fact being admitted, it was still in the discretion of the judges to permit him to go again in the race. The rule relied upon by the defendants for excluding the plaintiff's horse after the third heat provides that when a horse breaks from his gait in trotting or pacing the rider shall at once pull him to the gait in which he is to go in the race, and, the rider failing to do that, the horse shall lose the heat though he comes out ahead, and if he does not come out ahead all the other horses shall be placed ahead of him in that heat; "and the judges shall have discretionary power to distance the offending horse" and to fine the driver, etc. Now, it is evident that this discretionary power to exclude the offending horse from further participation in the race must be exercised by the judges before the next heat is run, and having exercised that power and permitted the horse to go again and win the race, nothing but the clearest evidence of fraud on the part of the owner of the horse should be allowed to set aside such decision of the judges.

The only claim that any fraud was practiced in the case by the plaintiff is the statement of one of the judges, that the driver made a false statement to them before they decided to let the horse go again, as to the extent of his pacing on the third heat. This is denied by the driver, and not positively testified to by either of the judges. We have great doubt whether the plaintiff is to be held liable for the statements made by his driver not in his presence or by his direction. But if he did make a misstatement as to the extent of the pacing done by his horse in the third heat, there is no clear proof that he would have been excluded had the driver made a more truthful statement. The witness *Day*, one of the judges of the race, testified: " If the truth was that the horse paced, he would have been distanced. That would not have been the result regardless of the fact whether he gained by it or not. The

question would be whether he gained by it." The person who drove the horse testified that the horse could not pace as fast as he could trot, and that he lost ground by pacing. Against this evidence there was only the evidence of the witness Howard, who testified generally that the horse's fastest gait was pacing. He never drove the horse or saw the horse in a race before the race in question.

There is nothing in the evidence that shows satisfactorily that the horse would have been distanced and excluded from further contesting for the race had the exact truth been known to the judges when they permitted him to remain in the race. Their decision to permit him to remain in the race must therefore stand.

*By the Court.*— The judgment of the circuit court is affirmed.

ORTON, J., dissents.