TOOMEY, Appellant, v. PENWELL et al., Respondents.

(No. 5,921.)

(Submitted April 7, 1926.   Decided April 16, 1926.)

[245 Pac. 943.]

*Gaming—Horse-races—When Transactions not Gambling—Action to Recover Entrance Fee—Complaint—Insufficiency—Statute—Definitions.*

Gaming—Statute—"Game"—Word Encompasses Horce-race Run on Wager.
 1.   The word "game" as employed in section 11180, Revised Codes, providing that a person who loses at any prohibited gambling game may recover the amount of his loss, etc., is sufficiently comprehensive to include a horse-race run on a bet or wager.

Same—Horse-race for Purse or Prize not Illegal.
 2.   Horse-racing, as such, is not prohibited in Montana, nor is it unlawful to conduct a horse-race for a purse, prize, premium, stake or sweepstakes, and a race run for a purse or premium is not transformed into a gambling transaction merely because every contestant is required to pay an entrance fee.

Same—Statute—"Purse"—Definition.
 3.   The word "purse" as used in the Revised Codes is synonymous with "prize" or "premium," and the words "purse, prize, premium, stake or sweepstakes" appearing in section 11559, permitting horse-races, mean some valuable thing offered by a person for the doing of something by others, into the strife for which he does not enter and which thing he has no chance of gaining.

Same—Status of Parties in Case of Bet or Wager; in Case of Purse or Premium.
 4.   In the case of a "bet" or "wager" the money belongs to the persons who post it, every one of whom has a chance to win it; in that of a "purse" or "premium" the money belongs to the person or association offering it, without a chance whatever to win it.

Same—Conducting Horse-race—When not a Gambling Transaction.
 5.   The mere fact that a Fair Association required the owners of a horse to pay an entrance fee and paid a purse plus an amount equal to the entrance fees to the owners or co-owners of the winning horse did not convert the race into a gambling transaction, the fees so paid having become the property of the association and a part of its general funds which it could use for that or any other lawful purpose.

Same—Horse-racing—Action to Recover Fee Paid for Entry of Horse—Complaint—Insufficiency.
 6.   Under the above rules, *held,* that the complaint in an action to recover the amount of two dollars lost by plaintiff as an alleged

 1.   Horse-racing as a game within gambling statute, see notes in 7 L. R. A. (n. s.) 899; 33 L. R. A. (n. s.) 828.   See, also, 12 R. C. L. 718.

[76 Mont. 166.]

bet on a horse-race, with exemplary damages, under section 11173, Revised Codes of 1921, alleging in substance that defendant Fair Association had given notice that it would conduct horse-racing for purses, at which any owner or co-owner of a horse competing in the races would be required to pay an entrance fee of two dollars and that no person other than such owner or co-owners would be permitted to pay an entrance fee; that plaintiff representing himself to be a co-owner of a certain horse paid the required fee for that horse in a race to be run; that the horse did not win; that the purse plus an amount equal to the entrance fees for that race was paid to the owners or co-owners of the winning horse; that the purse was made up of funds belonging to the association and that the association did not have any interest in the outcome of the race, etc., did not state a cause of action and that a demurrer thereto was properly sustained.

---

[1]  Gaming, 27 C. J., sec. 318, p. 1082, n. 97; Pleading, 31 Cyc., p. 333, n. 76.
[2]  Gaming, 27 C. J., sec. 7, p. 969, n. 20; sec. 267, p. 1051, n. 21.
[3]  Gaming, 27 C. J., sec. 44, p. 976, n. 66; sec. 46, p. 976, n. 70, 71; sec. 267, p. 1051, n. 19.
[4]  Gaming, 27 C. J., sec. 44, p. 976, n. 67; sec. 267, p. 1051, n. 20.
[5]  Gaming, 27 C. J., sec. 267, p. 1051, n. 21; p. 1052, n. 22.
[6]  Gaming, 27 C. J., sec. 348, p. 1097, n. 35.

*Appeal from District Court, Lewis and Clark County; W. H. Poorman, Judge.*

ACTION by É. G. Toomey against Lewis Penwell and others, doing business as the Montana State Fair. Judgment of dismissal, and plaintiff appeals. Affirmed.

*Mr. E. G. Toomey,* appellant, *pro se,* submitted a brief and argued the cause orally.

From the earliest times it has been determined that horse-racing comes within the description of betting or percentage games or games of chance. (*Goodburn* v. *Marley,* 93 English Rpr. 1099; *Wolf* v. *Hamilton* (L. R.), 2 Q. B. (1898) 337; *Hyams* v. *Stuart King* (L. R.), 2 K. B. (1908) 696.)

In America, horse-racing is generally held to be a game within the meaning of the gambling statutes. (*Cheesum* v. *State,* 8 Blackf. (Ind.) 332, 44 Am. Dec. 771; Opinion of Justices, 73 N. H. 625, 63 Atl. 505; *Miller* v. *United States,* 6 App. Cas. D. C. 6; *Thrower* v. *State,* 117 Ga. 753, 45 S. E. 126; *Swigart* v. *People,* 154 Ill. 284, 40 N. E. 432; *People* v.

*Weithoff,* 51 Mich. 203, 47 Am. Rep. 557, 16 N. W. 442; *Edwards* v. *State,* 8 Lea (Tenn.), 411.) And in accordance with this principle the new statutes in the United States providing for the recovery back of money or property lost by "playing at cards, dice or any other game or games," have been interpreted to include "betting on a horse race as gaming." (*Garrison* v. *McGregor,* 51 Ill. 473; *Richardson* v. *Illinois,* 85 Ill. 495; *Ellis* v. *Beale,* 18 Me. 337; 36 Am. Dec. 726; *Dyer* v. *Benson,* 69 Ga. 609; *Wade* v. *Deming,* 9 Ind. 35; *Shropshire* v. *Glascock,* 4 Mo. 536, 31 Am. Rep. 189. And see: *Joseph* v. *Miller,* 1 N. M. 621; *McLain* v. *Huffman,* 30 Ark. 428; *James* v. *State,* 4 Okl. Cr. App. 587, 112 Pac. 944; *State* v. *Shanklin,* 51 Wash. 35, 97 Pac. 969; *State* v. *Stripling,* 113 Ala. 120, 36 L. R. A. 81, 21 South. 409: *Shaffner* v. *Pinchback,* 133 Ill. 410, 23 Am. St. Rep. 624, 24 N. E. 867; *Corson* v. *Neatheny,* 9 Colo. 212, 11 Pac. 82.)

*Mr. Carl Rasch, Mr. Wm. T. Pigott* and *Mr. Lester Loble,* for Respondents, submitted a brief, and argued the cause orally.

The respondents, who admittedly conducted the horse-races described in plaintiff's complaint, did not violate any law in giving a purse or prize to the owner of the winning horse (*Alvord* v. *Smith,* 63 Ind. 58; *Morrison* v. *Bennett,* 20 Mont. 560, 40 L. R. A. 158, 52 Pac. 553; *Misner* v. *Knapp,* 13 Or. 135, 57 Am. Rep. 6, 9 Pac. 65; *Harris* v. *White,* 81 N. Y. 532; 27 Corpus Juris, 1051.)

Neither did the respondents violate any law in giving a purse or prize composed of a definite sum, plus an amount equal to the entrance fees paid respondents by those owners of horses desiring to participate in said races. (27 Corpus Juris, 1051; *Hankins* v. *Ottinger,* 115 Cal. 454, 40 L. R. A. 76, 47 Pac. 254; *Porter* v. *Day,* 71 Wis. 296, 37 N. W. 259; *Delier* v. *Plymouth County Agricultural Assn.,* 57 Iowa, 481, 10 N. W. 872; *People ex rel. Lawrence* v. *Fallon,* 152 N. Y. 12, 57 Am. St. Rep. 492, 37 L. R. A. 227, 46 N. E. 296; see, also, *Dion* v. *St.*

*Baptist Soc.,* 82 Me. 319, 19 Atl. 825; *Wilkinson* v. ₒ*Stilt*, 175 Mass. 581, 56 N. E. 830; *Johns* v. *Smith,* 77 Fla. 398, 81 South. 514; *Ballard* v. *Brown,* 67 Vt. 586, 32 Atl. 485.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Stated briefly, the plaintiff alleges in his complaint that during the second week of September, 1925, the defendants (for convenience called collectively the Fair Association) conducted certain horse-races at the fair ground near Helena, under the name or designation "Montana State Fair"; that due notice was given that "the Montana State Fair hereby offers various purses for horses competing in races to be held under the auspices of the Montana State Fair during the week of September 7 to 12, 1925. The amount of the various purses is to be found upon the daily program. Any owner or co-owner of a horse desiring to compete in any of said races must pay an entrance fee of not less than $2. No person other than an owner or co-owner of a horse entered in a race is permitted to pay an entrance fee."

It is alleged further that, upon payment of the entrance fee, the Fair Association delivered to each entrant a receipt, as follows:

"This is to certify that the Montana State Fair has received from the holder of this receipt the sum of $2; that the holder of this receipt represents himself to be one of the owners of the horse whose number appears on the back hereof and entered in a race to be run under the direction of the Montana State Fair; the said sum of $2 so paid is an entrance fee, paid by the bearer as one of the owners of said horse, to permit said horse to compete for a purse offered by the Montana State Fair for the horse winning said race. Said $2 is hereby paid unconditionally to the said Montana State Fair as such entrance fee, and the same cannot be withdrawn."

It is then alleged that on September 12, this plaintiff, representing himself to be a co-owner of the horse "Florence Fryer," paid to the association the sum of $2 as an entrance fee for that horse in a race to be run on that day for a purse or premium of $375; that there were five horses entered in the race; that the race was run; that the horse "Florence Fryer" did not win the race; that thereupon plaintiff demanded the return of the fee so paid by him, but the demand was refused, and the purse, plus an amount equal to the entrance fees for that race, was paid over to the owners, or reputed owners, of the horse "Woodwright" that won the race. It is alleged also that the purse of $375 was made up of funds belonging to the Fair Association, and that such association did not have any interest in the outcome of the race. The prayer is for the return of the $2, for exemplary damages, and for costs.

The trial court sustained a general demurrer to the complaint, and plaintiff, declining to plead further, suffered a judgment of dismissal to be rendered and entered against him, and appealed therefrom.

Since the enactment of Chapter 55, Laws of 1915, it has been "unlawful to make or report or record or register any bet or wager upon the result of any contest of speed or skill or endurance of animal or beast, whether such contest is held within or without the state of Montana." (Sec. 11180, Rev. Codes 1921.) It is also the law in this state, and has been for many years, that a person who loses at any prohibited gambling game may recover the amount of his loss, with exemplary damages, from every person having an interest in the game, either direct or contingent, as owner, backer or otherwise. (Sec. 11173.)

It is conceded, as it must be, that the term "game" as employed in that Act, is sufficiently comprehensive to include a horse-race run upon a bet or wager; in other words, since 1915 it has been unlawful to bet upon a horse-race, and

anyone who makes such a bet and loses may maintain an action to recover his loss.

The only question presented by this appeal is: Does the complaint describe such a transaction as amounts to a bet or wager upon the result of a horse-race, or, in other words, a gambling transaction?

The demurrer admits the truth of every material statement of fact contained in the complaint, and a restatement of those allegations will serve to make clear the question for decision. The allegations are: (1) That on September 12, 1925, a horse-race was run under the auspices of the Fair Association. (2) That it was run for a purse offered by the association made up of its own funds. (3) That every reputed owner or co-owner of a horse entered in the race—and no one else—paid a fee of $2 for the privilege of having the horse in which he was interested participate in the race. (4) That the plaintiff paid an entrance fee of $2 for the horse "Florence Fryer," and received a receipt therefor in the form quoted above. (5) That the Fair Association did not have any interest in the outcome of the race. (6) That the horse "Florence Fryer" was entered in the race, but did not win it. (7) That the Fair Association paid to the reputed owners of the winning horse the purse of $375, plus an amount equal to the entrance fees paid for that particular race.

The purpose of our statute is not to prevent horse-racing, but to prevent gambling. Horse-racing, as such, is not now [2] and, so far as we know, never has been, prohibited in this state. Neither is it unlawful to conduct a horse-race for "a purse, prize, premium, stake, or sweep-stakes." (*Morrison* v. *Bennett*, 20 Mont. 560, 40 L. R. A. 158, 52 Pac. 553.) On the contrary, our statutes recognize such form of diversion as perfectly legitimate, and protect it against the impositions of fraud and deceit. (Secs. 11559, 11560, Rev. Codes, 1921.) It is equally true that a race run for a purse or premium is not transformed into a gambling transaction merely because every

contestant is required to pay an entrance fee. (*Porter* v. *Day,*
71 Wis. 296, 37 N. W. 259; 27 C. J. 1051; 12 R. C. L. 715.)

In *Wilson* v. *Conlin,* 3 Ill. App. 517, the defendant instead
of paying the entrance fee in cash, gave his promissory note
for the amount, and, when his horse lost the race he refused
to pay, and contended that the transaction was a gambling
transaction, but the court decided to the contrary.

In *Delier* v. *Plymouth County Agricultural Society,* 57 Iowa,
481, 10 N. W. 872, the defendant conducted a race for which
it offered a purse, and for which it charged each contestant
an entrance fee. After the race was run, it refused to pay the
purse to the winner, upon the claim it was a gambling trans-
action; but the court held that it was not and that the purse
could be recovered by the successful contestant.

It is apparent from the language employed in our Code that
[3]  the term "purse" is used as synonymous with prize or
premium, and that, as they appear in section 11559, the terms
"purse, prize, premium, stake, or sweepstakes" mean "some
valuable thing, offered by a person for the doing of something
by others, into the strife for which he does not enter. He has
not a chance of gaining the thing offered; and if he abide by
his offer, that he must lose it and give it over to some of those
contending for it, is reasonably certain. Such is the meaning
of the words now, in common understanding, in the practical
use of them, and in the legislative purview." (*Harris* v.
*White,* 81 N. Y. 532.)

The distinction between a bet or wager on the one hand
[4]  and a purse or premium on the other is too well defined
and understood to require extended discussion. In *Alvord* v.
*Smith,* 63 Ind. 58 (a leading case upon the subject) the court
said: "In a wager or a bet, there must be two parties, and it
is known before the chance or uncertain event upon which it
is laid is accomplished, who are the parties who must either lose
or win. In a premium or reward, there is but one party until
the act, or thing, or purpose, for which it is offered, has been

accomplished. A premium is a reward or recompense for some act done; a wager is a stake upon an uncertain event. In a premium it is known who is to give before the event; in a wager, it is not known until after the event. The two need not be confounded." To the same effect is the decision in *Ballard* v. *Brown*, 67 Vt. 586, 32 Atl. 485.

The distinction may be stated in different terms: In the case of a bet or wager, the money belongs to the persons who post it, every one of whom has a chance to win it. In the case of a purse or premium, the money belongs to the person or association offering it, and such person or association has not any chance whatever to win it, but is certain to lose the amount.

Under the allegations of the complaint, the $375 offered by the Fair Association, and paid to the winner of the race in question, constituted a purse or premium within the meaning of our statute, and within the generally accepted definition of the term; and it follows that it was not unlawful for the Fair Association to conduct the race in question for a purse offered by it of its own funds, although it charged each contestant an entrance fee for the privilege of participating in the race.

But it is alleged in the complaint "that the defendants [5] [Fair Association] paid said purse of $375, plus an amount equal to the entrance fees paid in said race, to the person or persons representing themselves to be owners or co-owners of the horse 'Woodwright' that won said race." This is admitted to be true, and the only remaining question is: Does the fact that the Fair Association added to the purse offered by it an amount equal to the sum of the entrance fees paid for the race convert the race into a gambling transaction?

The question is not a new one. It has been before the courts frequently, and the authorities are practically unanimous in holding that such a transaction does not come within the inhibition of an anti-gambling statute as comprehensive as our own. In 27 C. J. 1051, it is said: "The mere fact that the contestants are required to pay an entrance fee does not make

the contest a wager, where the entrance fee does not specifically make up the purse or premium contested for; and it is held that there is no wager, but a valid transaction, where a purse consisting in part of entrance fees, and in part of an added sum, is offered."

The reason for the rule is apparent. When plaintiff paid the entrance fee, he received an adequate consideration for it—the privilege of having the horse "Florence Fryer" participate in the race. He parted with the title to the money and the $2 at once became the property of the Fair Association, and a part of its general funds, which it could use to pay premiums in whole or in part, to defray ordinary expenses, or for any other lawful purpose. (*Hankins* v. *Ottinger,* 115 Cal. 454, 40 L. R. A. 76, 47 Pac. 254.)

But these observations and the authorities cited have to do with *bona fide* transactions, and not with gambling so cleverly disguised as to appear to be what it is not. They are predicated upon the theory that the so-called entrance fee is an amount of money actually paid unconditionally and in good faith for the privilege of entering the contest and for no other purpose. If in fact the fee is not paid for such purpose, but is merely posted upon the outcome of the contest, no amount of dissembling can save the transaction from the condemnation of our anti-gambling statute.

It is alleged in the complaint "that on the twelfth day of September, 1925, the plaintiff, representing himself as a co-owner of a certain horse entered in said race, known as 'Florence Fryer,' paid the sum of $2 to the said defendants [Fair Association] as and for an entrance fee pursuant to the notice" given by the association and referred to above. In our opinion, this allegation is subject to only one construction, *viz.,* that the fee of $2 was paid as a condition precedent to the right of the horse "Florence Fryer" to participate in the race, and that this was the understanding of the parties is made plain. The receipt delivered to the plaintiff by the Fair Asso-

ciation recites that ''the said sum of $2 so paid is an entrance fee paid by the bearer as one of the owners of said horse to permit said horse to compete for a purse offered by the Montana State Fair for the horse winning said race.''

Under the pleading as thus construed, the transaction described is not a gambling transaction within the meaning of our statute or within any recognized definition of that term. The complaint does not state a cause of action, and the demurrer was properly sustained.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY, and ASSOCIATE JUSTICES GALEN, STARK and MATTHEWS concur.