Dear Representative Leist,
¶ 0 This office has received your request for an Attorney General Opinion in which you ask, in effect, the following question:
Whether hunting with hounds in competition for a stake, when thestake is comprised of pooled entrance fees paid by contestants,is a violation of Oklahoma law.
¶ 1 You inquire about the legality of a practice where persons enter hounds into a contest, sometimes known as a "money hunt," in which these hounds hunt other animals in competition. To participate in such contests, contestants make an outlay of cash or other item(s) of value as entrance fees, which are pooled. The pooled entrance fees, constituting the stake for the contest, are then distributed to winning contestants in gradations varying in accordance with the performance of their hunting hounds.
¶ 2 In responding to your inquiry we analyzed the statutes and case law of Oklahoma, as well as the case law of other jurisdictions, relating to gambling.
 OKLAHOMA'S ANTI-COMMERCIAL GAMBLING LAWS
A. Prohibitions Against Activities Involving "Bets" and"Gambling Places"
¶ 3 As discussed in Attorney General Opinion 95-6, dated March 30, 1995, Oklahoma has an extensive scheme of criminal statutes that forbids nearly every manner of gambling. As part of these restrictions against gambling, "commercial gambling" is specifically prohibited, 21 O.S. 1991 and Supp. 1998, §§981-988, and is a felony punishable by a term of imprisonment for not more than ten years and/or by a fine of not more than $25,000. 21 O.S. 1991, § 982[21-982](B). Among the conduct prohibited by Oklahoma's anti-commercial gambling statutes is: "Operating or receiving all or part of the earnings of a gambling place," 21O.S. Supp. 1998, § 982[21-982](A)(1), "[r]eceiving, recording or forwarding bets or offers to bet or, with intent to receive, record or forward bets or offers to bet, possessing facilities to do so," 21 O.S. Supp. 1998, § 982[21-982](A)(2), and "[f]or gain, becoming a custodian of anything of value bet or offered to be bet." 21 O.S. Supp. 1998, § 982[21-982](A)(3). Further, it is forbidden to permit any premises to be used for commercial gambling. 21O.S. 1991, § 983[21-983]. Persons permitting premises to be used for commercial gambling, i.e., intentionally "[g]ranting the use or allowing the continued use of a place as a gambling place," 21O.S. 1991, § 983[21-983](A)(1), are guilty of a misdemeanor punishable by a term of imprisonment for not more than one year and/or a fine of not more than $10,000. 21 O.S. 1991, § 983[21-983](B).
B. Whether "Money Hunts" are "Bets."
¶ 4 To determine whether "money hunts" are violative of Oklahoma's anti-commercial gambling statutes, the threshold question is whether a "money hunt" constitutes a "bet" as set forth in 21 O.S. Supp,1998, § 981(1). Importantly, Oklahoma's anti-commercial gambling statute defines the term "bet" as:
 [A] bargain in which the parties agree that, dependent upon chance, or in which one of the parties to the transaction has valid reason to believe that it is dependent upon chance, one stands to win or lose something of value specified in the agreement.
21 O.S. Supp. 1998, § 981[21-981](1).
¶ 5 An agreement, whether express or implied, exists between "money hunt" contestants that some stand to gain something of value, while others stand to lose something of value, namely winnings from the pooled entrance fees. These winnings, funded by pooled entrance fees, are distributed to contestants in varying gradations based upon the performance of their hunting hounds in the contest. Implicit in this agreement is that winning or losing is, in some measure, "dependent upon chance."
¶ 6 The term "chance" has received some attention from Oklahoma courts. In the case State v. Koo, 647 P.2d 889
(Okla.Crim.App. 1982), it was determined that, notwithstanding that elements of skill influence the outcome of certain games or activities, what a man does not know and cannot find out is recognized by the law as "chance":
 It is argued that football and baseball games are games of skill and not chance. While it is true that the outcome of certain activities are solely dependent upon skill and include no elements of chance, it would be an improper interpretation of [21 O.S. Supp. 1998, § 981[21-981](1)] to say that it was void as it applied to football and baseball games because the participant exercised skill or a lack thereof in determining the outcome of a game. Any result over which a party to a bet does not have control can be considered to be chance. . . .
 "What a man does not know and cannot find out is chance as to him, and is recognized as chance by the law."
Id. at 892, citing Dillingham v. McLaughlin, 264 U.S. 370,373 (1924).
¶ 7 The element of chance is evinced by the very nature of a "money hunt." The outcome of a "money hunt" cannot be foreseen, but rather befalls from fortune, hazard, and uncontrollable contingencies. Notwithstanding the potential that the hunting hound's skill, or lack thereof, may affect the ultimate outcome of a "money hunt," such skill cannot eliminate the materiality of chance in a "money hunt." The hunter's skill can be negated by the skill of its prey in evading capture; indeed the predictability of animals is inherently limited and teeming with hazard. Without doubt, the ultimate outcome of a "money hunt" is unknown, unknowable, outside the control of the contestants, and as such, dependent upon chance. Therefore, the elements of bargain and chance being present, "money hunts" meet the definition of a "bet" as set forth in 21 O.S. Supp. 1998, §981[21-981](1).
¶ 8 For purposes of this analysis, however, it is imperative to recognize that 21 O.S. Supp. 1998, § 981 excludes certain transactions and activities from the definition of the term "bet," including:
 [O]ffers of purses, prizes or premiums to the actual participants in public and semipublic events, as follows, to wit: Rodeos, animal shows, expositions, fairs, athletic events, tournaments and other shows and contests where the participants qualify for a monetary prize or other recognition. This subparagraph further excepts an entry fee from the definition of "a bet" as applied to enumerated public and semipublic events.
21 O.S. Supp. 1998, § 981[21-981](1)(c).
¶ 9 Thus, the question becomes whether "money hunts" are offers of "purses, prizes or premiums" to actual participants in a public or semipublic events of the type and nature enumerated in21 O.S. Supp. 1998, § 981[21-981](1)(c). To date, there are no cases in Oklahoma interpreting and applying 21 O.S. Supp. 1998, §981[21-981](1)(c), in the context of "money hunts" or otherwise. However, while Oklahoma's courts have yet to provide guidance on interpreting 21 O.S. Supp. 1998, § 981[21-981](1)(c), a well-settled rule of statutory construction is that words employed in a statute having a definite and well-known meaning at common law or in the law of this country are presumed to have been used in the sense that they were understood at common law, and a statute will be construed accordingly unless the context compels to the contrary. State v. Barnett, 69 P.2d 77, 85 (Okla.Crim.App. 1936). No such contrary context or intention appears in the Oklahoma anti-commercial gambling statute, therefore we must look to common law as an aid in construing 21 O.S. Supp. 1998, §981[21-981](1)(c).
¶ 10 The phrase "purses, prizes or premiums," and the individual terms therein, have been the topic of much analysis by the courts of other states, and have a definite and well-known meaning at common law. The law on this issue draws a distinction between contests for "purses, prizes or premiums" contributed solely by associations or other persons that do not compete for the "purses, prizes or premiums," and contests where the stake is contributed by the contestants themselves, and the successful contestant is to have the fund thus created.[1] In the case of "purses, prizes or premiums," the donor or person offering the same has no chance of gaining back the "purse, prize or premium" offered but, "if he abides by his offer, he must lose it," whereas in the case of a "stake, bet or wager," each party interested therein has a chance of gain and suffers a risk of loss. Pompano Horse Club v. State, 111 So. 801, 813 (Fla. 1927). In other words, in the case of a bet, the money belongs to those who post it, "every one of whom has a chance to win it."Toomey v. Penwell, 245 P. 943, 945 (Mont. 1926). In the case of a "purse, prize or premium" the money belongs to the person or association offering it, and such person or association has no chance to win it, but rather is certain to lose the amount. Id.
¶ 11 As applied, "money hunts" are not offers of "purses, prizes or premiums" to actual participants in public or semipublic events of the type and nature enumerated in 21 O.S.Supp. 1998, § 981[21-981](1)(c). The stake in a "money hunt" is not offered by a nonparticipating party who has no chance of gaining the stake, but rather is comprised of pooled entrance fees posted by contestants. Therefore, unlike the situation involving a "purse, prize or premium," contestants in a "money hunt" both create the stake and have a chance of gaining the stake.
¶ 12 In general, when a person or association sponsors or conducts contests for "purses, prizes or premiums," and the moneys or items of value paid to such person or association for the right of participation in such contest become part of the person or association's general assets, and the "purses, prizes, or premiums" are paid out to contestants without regard to such contributions, such activities will not be considered a "bet."See, e.g., People ex rel. Lawrence v. Fallon, 46 N.E. 296, 297
(N.Y. 1897).[2] Under these circumstances, unlike a "bet," the "purse, premium, or prize" is a reward or recompense for some act or achievement, not a hazard upon some unknown outcome.Toomey, 245 P. at 945.
¶ 13 We must also emphasize the Oklahoma Legislature's incorporation of the term "offers" in 21 O.S. Supp. 1998, §981[21-981](1)(c), which lends credence to the interpretation set forth above by implying that the amount of the "purses, prizes, or premiums," as well as the identity of the nonparticipating donor, are known prior to the event. Further, it seems doubtful that the "money hunts" described above are of the "public or semipublic" nature required by 21 O.S. Supp. 1998, § 981[21-981](1)(c). Certainly, the rule of 21 O.S. Supp. 1998, § 981[21-981](1)(c) was not intended to apply to situations involving a small number of owners competing their hunting hounds in a "money hunt" in a manner not involving the general public, such as rodeos, animal shows, expositions, fairs, athletic events, tournaments, or the like.
C. "Money Hunts" Violate Prohibitions Against CommercialGambling
¶ 14 Having decided that a "money hunt" constitutes a "bet" under Oklahoma's anti-commercial gambling statute, it is clear that the "money hunts," and the activities associated therewith, are among those proscribed by 21 O.S. Supp. 1998, § 982[21-982],
including but not necessarily limited to, operating or receiving all or part of the earnings of a "gambling place,"[3] 21O.S. Supp. 1998, § 982[21-982](A)(1); receiving, recording or forwarding bets or offers to bet, or with intent to receive, record or forward bets or offers to bet, possessing facilities to do so,21 O.S. Supp. 1998, § 982[21-982](A)(2); and permitting premises to be used for commercial gambling by intentionally granting the use of or allowing the continued use of a place as a "gambling place."21 O.S. 1991, § 983[21-983](A)(1). As such, "money hunts" as described above are unlawful and a violation of Oklahoma's anti-commercial gambling statutes.
¶ 15 It is, therefore, the official Opinion of the AttorneyGeneral that:
"Money hunts" in which: (a) persons enter hounds into a contestwhere the hounds hunt other animals in competition; (b) for theopportunity to participate in such contests, contestants make anoutlay of cash or other items of value as entrance fees, whichare pooled; and (c) the pooled entrance fees, constituting thestake for the contest, are then distributed to winningcontestants in gradations varying in accordance with theperformance of their hunting hounds, violate the anti-commercialgambling laws of Oklahoma at 21 O.S. 1991 and Supp. 1998, §§981-988.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
STEPHEN L. JANTZEN ASSISTANT ATTORNEY GENERAL
[1] See, e.g., State v. American Holiday Association, Inc.,727 P.2d 807 (Ariz. 1986); Hankins v. Ottinger, 47 P. 254 (Cal. 1986); Pompano Horse Club v. State, 111 So. 801 (Fla. 1927);Alvord v. Smith, 63 Ind. 58 (1878); Delier v. Plymouth CountyAgricultural Society, 10 N.W. 872 (Iowa 1881); Chenard v.Marcel Motors, 387 A.2d 596 (Me. 1978); Toomey v. Penwell,245 P. 943 (Mont. 1926); State v. GNLV Corporation, 834 P.2d 411
(Nev. 1992); Las Vegas Hacienda, Inc. v. Gibson, 359 P.2d 85
(Nev. 1961); People ex rel. Lawrence v. Fallon, 46 N.E. 296
(N.Y. 1897); Harris v. White, 81 N.Y. 532 (1881); Misner v.Knapp, 9 P. 65 (Or. 1885); Ballard v. Brown, 32 A. 485 (Vt. 1895); Porter Day, 37 N.W. 259 (Wis. 1888); see also
Restatement first of contracts § 521 (1932).
[2] See also Las Vegas Hacienda, Inc. V. Gibson,
359 P.2d 85,87 (Nev. 1961) (writing: "[t]he fact that each contestant is required to pay an entrance fee where the entrance fee does not specifically make up the purse or premium contested for does not convert the contest into a wager"); Chenard v. Marcel Motors,387 A.2d 596, 600 (Me. 1978) (writing: "[p]ayment of an entrance fee does not turn a legal competition into an illegal wager, at least where the fees do not make up the purse. . . . Of course, labels will not bind courts, and if the `entrance fees' collectively constitute a prize to be won by one of the contestants, the scheme will be found to be a wagering transaction. A competition will also become a wager if the one offering the prize may compete to win it") (citations omitted).
[3] A "gambling place is defined at 21 O.S. Supp. 1998, § 981[21-981](4) as:
 [A]ny place, room, building, vehicle, tent or location which is used for any of the following: making and settling bets; receiving, holding, recording or forwarding bets or offers to bet; conducting lotteries; or playing gambling devices. Evidence that the place has a general reputation as a gambling place or that, at or about the time in question, it was frequently visited by persons known to be commercial gamblers or known as frequenters of gambling places is admissible on the issue of whether it is a gambling place.
Without doubt, sites where "money hunts" take place are locations where bets are made, settled, received and held.