[S. F. No. 382.    Department One.—December 31, 1896.]

## G. V. HANKINS ET AL., RESPONDENTS, *v.* ADOLPH OTTINGER ET AL., APPELLANTS.

CONTRACTS—PUBLIC POLICY—HORSERACING—WAGER—PURSE OFFERED BY TROTTING ASSOCIATION.—A contract for a direct bet or wager between persons engaged in horseracing is illegal and void, as being against good morals and sound public policy; but a purse offered by a trotting association to the winner of a horserace, by way of premium or reward, does not come within the rule against bets or wagers; nor is competing for such premium or offering, whatever may be its designation, competing for a bet or wager, and the contract to pay the same may be enforced.

ID.—ADDITION OF ENTRANCE MONEY TO PURSE.—The fact that the association added to the purse the amount of the entrance money, paid by each of the competitors for the privilege of entering in the race, to be divided between the owners of the first, second, and third horses in the race, does not tend to impart to the transaction the character of a wager between the competitors.

ID.—PARTNERSHIP BETWEEN COMPETITORS—CONTRACT TO POOL PREMIUMS. A contract between the owners of competing racehorses entered in stake races, to be given as premiums by two associations, to the effect that they will pool all premiums and stake moneys offered by the associations, which should be awarded to either or any of their horses, and divide the same equally between such owners, constitutes a partnership in the transaction between the contracting parties; and the contract is a valid one, which may be enforced.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a new trial. WILLIAM R. DAINGERFIELD, Judge.

The facts are stated in the opinion of the court.

*Davis & Hill,* for Appellants.

The facts proved do not establish a partnership. (Freeman on Cotenancy and Partition, secs. 245, 250, 257–61, 266, 273–78; Civ. Code, secs. 682–86; 11 Am. & Eng. Ency. of Law, 1068, 1104, 1107; Lindley on Partnership, 17, 18, 54; *Sims* v. *Dame,* 113 Ind. 127; *Hewlett* v. *Owens,* 50 Cal. 474.) The racing of horses for moneys, toward which the contestants contribute, is a wagerous undertaking, and cannot be enforced in a court of justice. (Civ. Code, sec. 1667; *Beard* v. *Beard,* 65 Cal. 355; *Bangs* v. *Dunn,* 66 Cal. 73; *Forbes* v. *McDonald,* 54 Cal. 99; *Oscanyan* v. *Arms Co.,* 103 U. S. 267; *Rice* v. *Wood,* 113 Mass. 135; 18 Am. Rep. 459; *Vulcan Powder Co.* v. *Hercules Powder Co.,* 96 Cal. 517; *Morrill* v. *Nightingale,* 93 Cal. 458; *Hall* v. *Bergen,* 19 Barb. 126; *Gibbons* v. *Governeur,* 1 Denio, 171–73; *Harris* v. *White,* 81 N. Y. 539.)

*Rothchild & Ach,* for Respondents.

Defendants were partners. (Civ. Code, sec. 2359; *Soule* v. *Hayward,* 1 Cal. 345; *Clark* v. *Gridley,* 49 Cal. 106–08; Am. & Eng. Ency. of Law, tit. Partnership, 828, 834, 836; *Quine* v. *Quine,* 9 Smedes & M. 155; *Hulett* v. *Fairbanks,* 40 Ohio St. 233; *Nicoll* v. *Mumford,* 4 Johns. Ch. 522; *Hendy* v. *Marsh,* 75 Cal. 566; 1 Lindley on Partnership, 7, 11; Collyer on Partnership, 6th ed., secs. 18, 82, pp. 28, 29, 34; *Duryea* v. *Whitcomb,* 31 Vt. 399; *Duryea* v. *Burt,* 28 Cal. 569; *Harris* v. *Hillegass,* 54 Cal. 463; *Fromont* v. *Coupland,* 2 Bing. 170; *Fisher* v. *Sweet,* 67 Cal. 228.) The contract was within the scope of the partnership, was made with authority, and was ratified. (1 Am. & Eng. Ency. of Law, 34; *Midland Nat. Bank* v. *Schoen,* 123 Mo. 650; *Mason* v. *Partridge,* 66 N. Y. 633;

*Hoffman* v. *Toll*, 2 Ind. App. 287.)    The contract was not illegal or void.  (Chitty on Contracts, 977; *Alvord* v. *Smith*, 63 Ind. 58.)

Van Fleet, J.—It is contended that the contract sued on was without consideration, in that it was a mere wagering venture which was void as against public policy, and not enforceable in a court of law.  The contract, as alleged and found, was substantially this: The plaintiffs and the defendants, both owning racehorses, and having them entered in certain stake races about to be given by the Pacific Coast Blood Horse Association and the Calfornia Jockey Club, made the agreement between themselves that they would pool all premiums and stake moneys offered by said associations on said races which should be awarded to either or any of their said horses, and divide the same equally—one-half to the plaintiffs and one-half to the defendants.

It was found that one of the defendants' horses was awarded a purse so offered, amounting to five thousand four hundred and eighty dollars, which defendants now refuse to divide.

At common law a wager made in respect to matters not affecting the feelings, interests, or character of third persons or the public peace, or good morals or public policy, was valid, and its payment could be enforced; but if it was of a kind to affect the interests or character of third persons, or was in relation to a matter which militated against good morals or sound public policy, it was void, and no action in affirmance of such a contract could be maintained.

Whether betting on horseraces was of a character to fall within the latter class at common law is a matter about which there is elsewhere some contrariety in the adjudged cases.  But, so far as this state is concerned, the question has been directly settled in the case of *Gridley* v. *Dorn*, 57 Cal. 78, 40 Am. Rep. 110, where it was held that such contracts are void as contravening good morals, and cannot be enforced by the courts.

It is well settled, however, that a bet or wager, such as comes within the rule of public policy and good morals invoked in that case, and by the appellants here, is where the parties competing *themselves* each put up or bet a certain sum or valuable thing, which is to be taken by the winner and forfeited by the loser on the turn of the event. (*Alvord* v. *Smith*, 63 Ind. 58; *Harris*· v. *White*, 81 N. Y. 532.)

Such a contract will not be affirmed by the courts, but the parties will be left for redress to their own code of ethics.

But the contract presented for consideration was not such a contract. It related solely to purses or stake moneys to be paid by the associations offering them, and covered nothing which the parties themselves might see fit to hazard. There was no wager or bet of their own money, to be lost by one and taken by the other, but only that of a third party offered for their competition. This did not constitute the transaction a wager. " There is a clear distinction," say the supreme court of judicature of Indiana in *Alvord* v. *Smith, supra,* " between a wager or bet and a premium or reward. In a wager or a bet there must be two parties, and it is known, before the chance or uncertain event upon which it is laid is accomplished, who are the parties who must either lose or win. In a premium or reward there is but one party until the act or thing or purpose for which it is offered has been accomplished. A premium is a reward or recompense for some act done; a wager is a stake upon an uncertain event. In a premium it is known who is to give before the event; in a wager it is not known till after the event. The two need not be confounded."

That was a case where the winner of a purse offered by a trotting association on a race sued to recover the amount upon the association refusing to pay; the defense of the latter being that the purse was a mere wager, which did not constitute a valid consideration

for their promise. It was held that the winner could recover.

The distinction between a bet or wager and a premium or purse is thus given in *Harris* v. *White, supra:* "A bet or wager is ordinarily an agreement between two or more that a sum of money or some valuable thing, in contributing which all agreeing to take part, shall become the property of one or some of them, on the happening in the future of an event at the present uncertain; and the stake is the money or thing thus put upon the chance. There is in that this element that does not enter into a modern purse, prize, or premium, viz., that each party to the former gets a chance of gain from others, and takes a risk of loss of his own to them. 'Illegal gaming implies *gain and loss between the parties* by betting, such as would excite a spirit of cupidity.' (*People* v. *Sergeant*, 8 Cow. 139.) A purse, prize, or premium is ordinarily some valuable thing offered by a person for the doing of something by others, into the strife for which he does not enter. He has not a chance of gaining the thing offered; and, if he abide by his offer, that he must lose it, and give it over to some of those contending for it, is reasonably certain."

It is betting or wagering on the event of races which is regarded by the law as immoral, and which it undertakes to discourage by refusing its countenance in the way of legal redress to *enforce* such compacts. Trials of speed between horses, commonly denominated horse-races, are not in themselves, and apart from the improper purposes they may be made to subserve, discountenanced by the law. Nor is the giving of purses or premiums by associations or individuals not themselves competing, for the purpose of encouraging such contests, regarded as contrary to good morals or forbidden. Were these things unlawful, our state and district agricultural societies, which are fostered and encouraged by the laws of the state, would be compelled to forego one of their

most popular and attractive features. The offering of a purse or premium for the fastest racehorse is not distinguishable in principle, however it may be otherwise regarded, from the giving of a premium for the best qualities in other respects in the horse, as for draught or breeding purposes; or for the best breed of bulls or cows, or other domestic animals. In the one case it encourages the breeding of the animal for his qualities of speed; in the other, it brings out the best draughthorse or brood mare, or the most desirable breed of cattle, sheep, or hogs.

And competing for such premiums or offerings, whatever may be their designation, is not competing for a bet or wager. As suggested in *Alvord* v. *Smith, supra:* "These premiums are certainly not wagers. As well might we call an insurance policy a wager, because it is to be paid on an uncertain event, as to call a premium a wager, because we do not know who will be entitled to it until the event happens."

In the present case the evidence shows that the amount found to have been won by defendants was all money offered by the associations. The fact that the latter added to the five thousand dollar purse the amount of the entrance money, to be divided between the first, second, and third horses in the race, did not tend to impart to the transaction the character of a wager between the competitors. This entrance money had been paid to the associations by the various persons desiring to compete in the race, respectively, not as a wager or bet, which might be withdrawn before the event, but as a fee for the privilege of entering in the race, which became and was the property of the association as much as was the principal purse of five thousand dollars. It constituted in no proper sense a bet or wager between the parties.

The objection that the evidence does not sustain the finding that defendants were partners in the transaction is untenable. Under the evidence the court was fully justified in finding the existence of that relationship;

and also that Ottinger was authorized to enter into the agreement in behalf of the partnership.

The order denying a new trial is affirmed.

HARRISON, J., and McFARLAND, J., concurred.

Hearing in Bank denied.

BEATTY, C. J., dissented from the order denying a hearing in Bank.