# Court of Appeals.

March 2, 1897.

## PEOPLE *ex rel.* SAMUEL B. LAWRANCE v. JOHN FAL-LON, as Warden, etc.

**1. LOTTERIES—HORSE RACING.**

A race or other contest is not a lottery simply because its result is uncertain, or because it may be affected by things unforseen and accidental.

**2. SAME.**

The offering of premiums or stakes by an association for a definite sum, without regard to the amount of entrance fees received and which are payable out of its general funds made up partly of entrance fees paid by

the owners of the competing horses, does not constitute an offense under the statute relating to lotteries, nor is it a violation of the statute relating to book-making or pool-selling,

**3. SAME.**

Such offering of premiums or prizes is not in any such sense a contract or undertaking in the nature of a bet or wager as to constitute gambling within the spirit and intent of the provisions of § 9, article 2, state Constitution.

Appeal from an order of the Appellate Division of the Supreme Court in the First Department affirming a final order of the Court of Oyer and Terminer of the City and County of New York, which sustained writs of *habeas corpus* and *certiorari* issued in behalf of the relator and discharged him from the custody of the appellant.

John D. Lindsay and Benjamin Steinhart, for appellant.

Joseph S. Auerbach, John M. Bowers and Elihu Root, for relator respondent.

MARTIN, J.—The relator was arrested upon three distinct criminal charges. One was for a violation of chapter eight of the Penal Code, forbidding lotteries and the sale of lottery tickets ; another, for violating section three hundred and fifty-one of the Penal Code, which relates to poolselling, bookmaking and bets and wagers, and the third for an offense under section three hundred and fifty-two of the same act, relating to racing of animals for stakes. When arraigned before the magistrate he waived an examination and was committed to the city prison. He subsequently sued out a writ of *habeas corpus*, upon the return of which a *certiorari* was granted, and upon the hearing before the Oyer and Terminer he was discharged.

The facts, so far as material, may be briefly stated. The relator was an officer of the Westchester Racing Association, which was organized under chapter 570 of the Laws of 1895. He, together with other officers of the association, announced and advertised the intention of the association to hold a meeting for races on its grounds ; and offered purses or premiums to be competed for at a time named. Owners of horses were permitted to enter them for the races by paying an entrance fee, which became the property of

the association, was paid into its general treasury and became a part of its general assets. The premiums or stakes offered by the association were for a definite sum, without regard to the amount of entrance fees received, and were payable out of its general funds. The races were advertised, managed and held under the direction of the association and its officers, conducted in the usual way, and governed by the rules generally adopted by racing association.

The first contention of the appellant is that the races thus held were in direct violation of chapter eight of the Penal Code, which forbids lotteries and the sale of lottery tickets. That statute defines a lottery as a scheme for the distribution of property by chance, among persons who pay or agree to pay a valuable consideration for the chance. It is obvious from the language of this statute, and the circumstances existing at the time of its passage, that it was not intended to include within its provisions every transaction which involved any degree of chance or uncertainty, but its plain purpose was to prohibit and punish certain well-known offenses which had existed and been regarded as crimes before the enactment of the law. The offenses thus sought to be suppressed have long been known and understood, and are clearly distinguisable from the racing of animals for stakes or prizes. There is certainly a great difference between a contest as to the speed of animals for prizes of premiums contributed by others and a mere lottery, where the controlling and practically the only, element is that of mere chance alone. A race or other contest is by no means a lottery simply because its result is uncertain, or because it may be affected by things unforseen and accidental. When this statute against lotteries was passed the Legislature not only defined the meaning of the term, which cannot be fairly said to include a test of speed or endurance of horses for prizes or premiums, but it at the same time passed a statute relating to the racing of horses, which shows that such a contest was not intended to be included among the offenses which should be punishable under the statute against lotteries. What constitutes a lottery was considered in Reilly v. Gray (77 Hun, 402.) The opinion in that case and the authorities there collected show quite satisfactorily that acts like those performed by the relator do not and were not intended to con-

stitute an offense under the statute relating to the subject. We are of the opinion that the Courts below properly held that the relator was guilty of no offense under the statute relating to lotteries.

After a careful examination of the record, brief, argument and authorities cited by the learned counsel for appellant, we fail to find any facts or to discover any principle of law that would justify us in holding that the relator was guilty of either bookmaking or poolselling. Nor do we find that there was any evidence even ending to show that he was guilty of either of those crimes.

Another question we are asked to determine is whether the races held by the association, of which the relator and his associates were officers, constituted gambling within the provisions of the Constitution of this State. The appellant contends that they did and, consequently, even if authorized by statute, the statute was violative of the provisions of the Constitution, which forbids lotteries or the sale of lottery tickets, poolselling, bookmaking and every other kind of gambling, and therefore affords no protection or justification to the relator. Chapter 570 of the Laws of 1895 authorizes associations organized under the provisions of that act to hold and conduct meetings for running or trotting races for purses, premiums, prizes or stakes, to be contributed by the corporation or owners of horses engaged in the races, or others who were not participants therein, but forbade any other person than the owners of contesting horses from having any pecuniary interest in such prizes or premiums contested for, or from being entitled to receive any portion thereof after the race was finished, and further provided that the whole of such prize should be awarded according to the conditions of the race. The validity of that statute is challenged, and the appellant insists that it is void for the reason that it authorized a species of gambling which was in terms forbidden by the Constitution of the State. As it was conceded in this case that the moneys contributed by the horse owners participating in the races were paid into the general treasury of the association, and became, for the time being, a part of its general assets , subject only to the obligation of the association to pay out of its funds the amount of thirty-five hundred dollars to the owners of the first, second and third horses in the races, the inquiry

arises whether the offering or payment of premiums or prizes contributed in that manner constitutes gambling, within the meaning of the constitutional provision referred to. There is a plain and obvious distinction between a race for a prize or premium contributed in that manner, and a race where the stake is contributed by the participants alone and the successful contestant is to have the fund thus created. The latter is a race for a mere bet or wager, while the former is for a prize offered by one not a party to the contest. In Harris v. White (81 N. Y., 632) Judge Folger fully discussed and quite clearly pointed out the distinction between a race for a prize or premium and a bet or wager. The conclusion reached in that case was that a race for a prize or premium offered by such an association, under circumstances similar to those existing in this case, was not within the condemnation of the law relating to gambling, or illegal gaming. If the doctrine contended for by the appellant is sustained, it would seem to follow that the farmer, the mechanic or the stockbreeder who attends his town, county or State fair, and exhibits the products of his farm, his shop or his stable, in competition with his neighbors or others for purses or premiums offered by the association, would become a participant in a crime, and the officers offering such premium would become guilty of gambling under the provisions of the Constitution relating to that subject. Those transactions are in all essential particulars like this. In those, as in this, one of the parties strives with others for a prize; the competing parties pay an entrance fee for the privilege of joining in the contest, and in those cases, as in this, the entrance fee forms a part of the general fund from which the premiums or prizes are paid. Indeed, all those transactions are so similar to this as to render it impossible to discover any essential difference between them. The decision of this court in Harris v. White renders any further discussion of the question unnecessary. We are of the opinion that the offering of premiums or prizes to be awarded to the successful horses in a race is not in any such sense a contract or undertaking in the naure of a bet or wager as to constitute gambling within the spirit and intent of the constitutional provision under consideration.

Nor can it be held that the relator was guilty of a crime under the provisions of section three hundred and fifty-two of the Penal

Code. That section prohibits racing for a sake, bet or reward, except as allowed by special law. That chapter five hundred and seventy is a special law, within a meaning of the section, we have no doubt. It is manifest that such racing was not intended to be entirely prohibited by this statute, as it plainly indicates that the Legislature contemplated the existence or passage of special laws pertaining to races for stakes or reward.

We think the determination of the Courts below was corrected, and that the judgment of the Appellate Division should be affirmed.

All concur.