[Crim. No. 1431. First Appellate District, Division One.—October 26, 1927.]

In the Matter of the Application of JAMES S. McDONALD for a Writ of Habeas Corpus.

Walter H. Linforth for Petitioner.

Franklin Swart, District Attorney, and Edmund Scott, Deputy District Attorney, for Respondent.

Joseph Edward Connolly and Clarence A. Linn, *Amici Curiae*.

CASHIN, J.—Petitioner is held by the sheriff of San Mateo County on a warrant issued by the city court of the city of San Bruno. He seeks to be released on *habeas corpus*, claiming that the complaint upon which the warrant was issued fails to state a public offense.

The complaint charged a violation of section 337a of the Penal Code, the facts being alleged as follows: "That on the 22nd day of August, A. D. 1927, at Tanforan in said county the San Francisco Jockey Club, an association, held a horse-race on a race-track controlled and operated by it for that purpose at Tanforan, in said county of San Mateo and state of California, to test the speed of horses which might be and which were regularly entered in said race, and invited the owners of horses to enter the same in said race, and offered a purse of not less than five hundred dollars ($500) and as much more as the judge or judges presiding at said race, after 'the same had been run, should conclude, determine and fix for the winners in said race, to be distributed as follows, to-wit: seventy (70%) per cent of said purse to the owner of the horse finishing first in said race; twenty (20%) per cent to the owner of the horse finishing second in said race and ten (10%) per cent to the owner of the horse finishing third in said race, and that five horses were entered in the race designated on the printed program as Race No. 1 under the terms and conditions of the written contract of entry made between the owner of each of said horses and said San Francisco Jockey Club, which among other things provided as follows, to-wit:

" 'That owner of the above entered horse hereby leases the horse to the said San Francisco Jockey Club for the above named race under the following conditions, to-wit: That should the horse finish first said San Francisco Jockey Club will pay said owner seventy (70%) per cent of the purse or prize as fixed and determined by the judge or judges presiding at said race, after the running of said race said purse to be not less than the sum of five hundred ($500) dollars; should the horse finish second twenty (20%) per cent, and if it finishes third ten (10%) per cent.

" 'The owner agrees to deliver the horse to the paddock fifteen minutes before the time set for said race in proper racing condition, with racing paraphernalia and a competent rider, and also agrees to hold said San Francisco Jockey Club blameless for any injury in said race,' and that said San Francisco Jockey Club published and circulated a printed program which designated the race or contest of speed and the horses entered therein by number, and that one of said horses so entered in said race No. 1 was designated as No. 501 on said official program, and that the above named defendant James S. McDonald at said time and place handed to John H. Gagliardo, then and there an employee of and representing and acting for the said San Francisco Jockey Club, the sum of ten ($10) dollars in lawful money of the United States of America, which said sum was then and there received by said John H. Gagliardo as such employee of said San Francisco Jockey Club, and thereupon the said John Gagliardo so representing and acting for said San Francisco Jockey Club, did then and there issue and deliver to the said defendant James S. McDonald, to evidence the terms and conditions upon which said sum of money was delivered to and received by said San Francisco Jockey Club, a receipt in return for said sum in words and figures as follows, to-wit: 'San Francisco Jockey Club. Tanforan, San Mateo county, California. August 22nd, 1927. (The numbers correspond with the number of the race and entry on the printed program.) Amount $10.00. Race No. 1, Entry No. 501. (The above sum is received on the conditions printed on the reverse side hereof.)'

"Reverse side: 'The holder of this receipt has voluntarily contributed the amount indicated on the reverse side hereof to the said San Francisco Jockey Club, which becomes the

absolute owner thereof, to defray expenses, provide suitable purses, and induce the entry number indicated on the reverse side hereof and other entries to enter the race indicated by the number on the reverse side hereof. The numbers correspond with the numbers on the official program. If the entry number indicated on the reverse side hereof shall be first in the race the holder will receive the proportion of seventy (70%) per cent of all that remains, *if any,* of the entry fees and contributions made to the race after the payment of purses and all expenses incident to or connected with the race that the amount received hereunder bears to the total amount so remaining. If the entry number indicated on the reverse side hereof shall be second in the race the holder will receive twenty (20%) per cent of the aforesaid amount; if the entry number indicated on the reverse side hereof shall be third in the race the holder will receive ten (10%) per cent of the aforesaid amount.'

"And that in said race, the same then and there being a trial and contest of the speed of said horse so entered and racing therein, said horse known and designated as No. 501 finished first and was the winner in said race, and that the judge or judges then and there presiding at said race thereupon fixed the sum of six hundred ($600) dollars as the purse or prize to go to the winner of said race; that under and in accordance with the terms and conditions of the aforesaid contract, under which said horse was entered in said race, said San Francisco Jockey Club paid to the owner of said horse the sum of Four hundred and twenty ($420) dollars, the same being seventy (70%) of the aforesaid amount so fixed as the purse or prize to go to the winner; and the said San Francisco Jockey Club paid to the owner of said horse which finished second in said race the sum of One hundred and twenty ($120) dollars, the same being twenty (20%) per cent of the aforesaid prize or purse, and the said San Francisco Jockey Club paid to the owner of the horse which finished third in said race the sum of sixty ($60) dollars, the same being ten per cent (10%) of the amount of said purse or prize; that the said San Francisco Jockey Club paid to the defendant James S. McDonald to whom the aforesaid receipt was issued, and from whom the said sum of ten ($10) was received as aforesaid, the sum of twelve and one-half ($12.50) dollars, the

same being the proportion of seventy (70%) per cent of the amount of entry fees paid by the owners of horses entered in said race and of all contributions made to the aforesaid race remaining after the payment of the purse aforesaid and all expenses of said race that the sum of ten ($10) dollars bore to the whole amount of the aforesaid entry fees and contributions so remaining, which said sum was accepted, received and retained by the said defendant James S. McDonald; and that said San Francisco Jockey Club paid to all others similarly contributing and holding similar receipts the same proportion of said amount so remaining.''

Subdivision 6 of section 337a of the Penal Code provides that ''Every person . . . who lays, makes, offers or accepts any bet or bets or wager or wagers upon the result or purported result of any trial or purported trial or contest or purported contest of skill, speed or power of endurance of man or beast, or between man, beasts or mechanical apparatus, is punishable by imprisonment, etc. . . . ''

It is held in *Hankins* v. *Ottinger*, 115 Cal. 454 [40 L. R. A. 76, 47 Pac. 254], that the giving of purses or premiums by associations or individuals not themselves competing for the purpose of encouraging trials of speed between horses, though the purse or premium be composed in part of entrance fees, is not contrary to good morals or prohibited; and competing for such premiums whatever be their designation is not competing for a bet or wager. As the court said: ''It is the betting or wagering on the event of races which is regarded by the law as immoral and which it undertakes to discourage.''

The transaction described in the complaint was in effect an agreement whereby the sums contributed were to be pooled and the entire fund less such deductions as the Jockey Club was authorized to make divided among the contributors who selected the winning horse. Had the amount to be deducted been fixed in advance, as is usual, the transaction in brief would have constituted what is commonly known as a mutual pool, and the contributions mutual bets or wagers (27 Cor. Jur., Gaming, sec. 42, p. 976; *James* v. *State*, 63 Md. 242, 249) ; but it is claimed that the element of uncertainty with respect to the action of the fund-holder distinguishes the arrangement from the ordi-

nary betting pool, and that the sums contributed were by reason of such uncertainty not bet or wagered.

In support of this contention reliance is placed upon the case of *Plottel* v. *Boyle,* decided by the supreme court of Missouri on August 1, 1927, in which it appears, however, that a rehearing has been granted. It was there held under a Missouri statute prohibiting the recording or registering of wagers on race-horses, but not prohibiting betting thereon, that the essential characteristic of a bet or wager is the certainty that the sum to which all contribute shall become the sole property of one or some of the contributors; and where it appeared from an agreement similar to the one in the present case that the first claims upon the fund contributed were the purse and expenses of the race and that these claims might consume the whole, there was no certainty that any part thereof would be paid to the contributors, and the sums contributed were not bets or wagers upon the result of the contest.

In Black's Law Dictionary a bet is defined as "an agreement between two or more persons that a sum of money or other valuable thing shall become the sole property of one or more of them on the happening in the future of an event at present uncertain or according as the question disputed between them is settled one way or the other," a wager being defined in Bouvier's Law Dictionary as "a contract by which two parties or more agree that a certain sum of money or other thing shall be paid or delivered to one of them on the happening or not happening of a certain event"; and generally the terms are used as synonymous (27 Cor. Jur., Gaming, sec. 35, p. 974).

It is clear from the above definitions that the question whether such contributions are bets or wagers does not depend upon the certainty that a part of the fund will remain after the claims of the fund-holder are satisfied, but rather upon the agreement, express or implied, that the amount remaining, if any, shall become the property of one or some of the contributors to the exclusion of the others upon the happening in the future of an event at present uncertain.

The fact, urged by petitioner as saving the transaction here entered into from characterization as a bet or wager, that there is a possibility that the whole of the sums con-

tributed may be used by the racing association as prizes given to the owners of the winning horses and other related expenses, so that nothing would remain to be distributed to those who contributed to the common fund, is immaterial, since the character of the agreement here entered into must be judged not by what is actually done under it by the fund-holder, but by what may be done. Notwithstanding the conclusion reached in the case last cited we are compelled to hold that in transactions of the kind described in the complaint the sums contributed are bets or wagers on the result of the contest.

While in the present case it was not directly averred that the sum contributed by petitioner was bet or wagered, such, nevertheless, was the effect of the facts alleged, and it was the manifest purpose of the pleading to charge an offense under the above subdivision of the section.

A proceeding in *habeas corpus* cannot be made to serve the office of a demurrer (*Ex parte Williams,* 121 Cal. 328, 330 [53 Pac. 706]); and notwithstanding a defective statement of facts, if the complaint purports or attempts to state an offense of a kind of which the court assuming to proceed has jurisdiction, whether the facts charged are sufficient to constitute an offense of that kind cannot be examined on *habeas corpus* (*In the Matter of Ruef,* 150 Cal. 665 [89 Pac. 605]; *In re Avdalas,* 10 Cal. App. 507 [102 Pac. 674]).

The averments of the complaint were sufficient within the above rule to charge a public offense, and the writ is therefore discharged and the petitioner remanded.

Tyler, P. J., and Knight, J., concurred.