Appellate Department, Superior Court, Los Angeles

[Civ. A. No. 6001.   June 21, 1945.]

THE PEOPLE, Appellant, v. WILLIAM POSTMA et al., Respondents.

Fred N. Howser, District Attorney, and J. J. Sullivan and A. Alexander, Deputies District Attorney, for Appellant.

William G. Kenney and William Mayhew for Respondents.

SHAW, P. J.—This is an appeal by the plaintiff from a judgment entered against it after the sustaining of a demurrer to the complaint. The complaint purports to be filed under section 325 of the Penal Code, which provides that "All moneys and property offered for sale or distribution in violation of any of the provisions of this chapter are forfeited to the state, and may be recovered by . . . any action brought . . . by any district attorney, in the name of the state." The provisions of the chapter referred to relate only to lotteries, which are defined by section 319, a part of the chapter, as follows: "A lottery is any scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property or a portion of it, or for any share or any interest in such property, upon any agreement, understanding, or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, or gift-enterprise, or by whatever name the same may be known."

The question for consideration is whether the complaint shows that defendants were conducting a lottery, as so defined. It alleges that defendants were engaged in bookmaking on horse races which were run at various tracks in the United States. They had scratch sheets, betting markers and all the usual paraphernalia of such a place. "[P]ersons known as

bettors ... would select horses upon which horses such bettors would then lay, make and place bets in money. Said defen- dants would then accept such bets and wagers." Bets were placed on a horse to "win," "place" or "show," and defendants made a record of them. Although the complaint does not directly so allege, apparently the amounts bet by these bettors were deposited with the defendants, for "All money bet on horses not completing the races as indicated by the bettors was kept by the defendants." The odds or prices paid bettors making bets on winning horses were determined at the race tracks at which the respective winning horses raced. The description of the manner in which this was done at the tracks shows that it was by what is commonly known as the pari- mutuel system. These odds or prices were relayed to defen- dants and they "would then, in cash, pay a similar price to such bettor who had bet on the winning horses." It is obvi- ous from the allegations above reviewed that defendants paid the winning bettors the amounts determined at the tracks, regardless of the total amount of the bets placed with them, and even though on any particular race such amount was not sufficient to pay the winners.

Defendants were arrested on September 18, 1944, the cause of the arrest not appearing, and the arresting officers then seized and took possession of the sum of $634, which "had been and was then and there being offered by said de- fendants, their agents, servants and employees for distribu- tion in the operation and conduct of said 'book' as aforesaid in violation of the provisions of,"—citing the parts of the Penal Code above-mentioned. The allegation just quoted is but a conclusion of law and adds nothing to the strength of the complaint against a demurrer. (*Smith* v. *Bentson* (1932), 127 Cal.App.Supp. 789, 793 [15 P.2d 910].) The question of lottery or no lottery must be determined from the allega- tions showing defendants' actual mode of operation.

Under our statute, three elements are necessary to constitute a lottery: (1) The disposition of property,—the prize—, (2) upon a contingency determined by chance, (3) to a person who has paid or promised to pay a valuable con- sideration for the chance of winning the prize, and upon the understanding that it will be disposed of by chance. (*People* v. *Hecht* (1931), 119 Cal.App.Supp. 778, 784 [3 P.2d 399]; *People* v. *Cardas* (1933), 137 Cal.App.Supp. 788, 790 [28 P.2d

99]; *People* v. *Babdaty* (1934), 139 Cal.App.Supp. 791, 793 [30 P.2d 634]; *Niccoli* v. *McClelland* (1937), 21 Cal.App.2d Supp. 759, 762-3 [65 P.2d 853].) If any of these elements is lacking, there is no lottery. (*People* v. *Hecht, supra.*)

The Supreme Court of Arizona, considering a case which was substantially the same as that before us, as far as the activities of the bookmaker are concerned, held that the bookmaker there was not conducting a lottery. Its decision to this effect was based on its conclusion that horse racing is not a matter of chance, or at least chance is not its dominating element. (*Engle* v. *State* (1939), 53 Ariz. 458 [90 P.2d 988, 993].) The court's definition of a lottery was substantially the same as that above set forth from our code. In other cases it has been held that the operation of the pari-mutuel system of betting on horse races does not constitute a lottery, for the same reason, that the winnings are not determined by chance. (*Commonwealth* v. *Kentucky Jockey Club* (1931), 238 Ky. 739 [38 S.W.2d 987, 992]; *People* v. *Monroe* (1932), 349 Ill. 270 [182 N.E. 439, 85 A.L.R. 605, 613]; *Utah State Fair Assn.* v. *Green* (1926), 68 Utah 251 [249 P. 1016, 1022-3].) In each of these cases the question for decision was whether a statute authorizing the pari-mutuel system of betting on horse races violated a constitutional provision forbidding lotteries, and it was held not to do so, for the reason stated. In the Utah case the principal stress is laid on a constitutional prohibition of games of chance, which on examination is found to run against lotteries also, and the statute was held to violate neither prohibition. In *People* v. *Fallon* (1897), 152 N.Y. 12 [46 N.E. 296, 57 Am.St.Rep. 492, 37 L.R.A. 227, 229], it was held that a statute authorizing horse racing for prizes did not violate a constitutional prohibition of lotteries, because the decision of a horse race does not rest on chance. There are cases holding that a horse race is a matter of chance (*Irving* v. *Britton* (1894), 8 Misc. 201 [28 N.Y.S. 529, 531]; *State* v. *Lovell* (1877), 39 N.J.L. 458, 462; *State* v. *Ak-Sar-Ben Exposition Co.* (1929), 118 Neb. 851 [226 N.W. 705, 709]), but they appear to be in the minority. See *Commonwealth* v. *Kentucky Jockey Club, supra,* where they are reviewed. But we do not find it necessary to decide in this case whether chance predominated, because for other reasons we conclude that there was no lottery.

■ The operations of defendants fell short of constituting a lottery under our statute for the reason that they did

not involve "the disposal or distribution of property . . . among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property," as required by Penal Code, section 319. There was nothing put up as a prize. According to the complaint, the various "bettors" selected horses and upon them would "lay, make and place bets in money" and the defendants would "accept such bets." This shows simply betting or wagering, each bettor for himself dealing with the defendants as the other bettor. ■ To be sure, the amount bet by the defendants was uncertain at the time the bet was made, but the mode for determining the amount was then known. A bet is not the less a bet because of uncertainty as to the amount. (*In re McDonald* (1927), 86 Cal.App. 362, 367 [260 P. 842].) In this case it was held that sums put up by persons contributing to a pool much like that arising under the pari-mutuel plan were bets, and that the operators of the scheme were violating the provisions of section 337a of the Penal Code penalizing the making of bets on races and other contests. ■ When two persons bet with each other, it cannot be said that either of them, or the stakeholder, if there is one, has offered any property for disposal or distribution to persons who have paid a consideration for the chance of obtaining it. Each bettor has put up his own property on a venture and at risk of losing it, but has not paid for the chance of winning that of the other bettor. This is true at least where but two persons or two opposing sets of persons are concerned in the bet, as here. In the case of a pari-mutuel pool to which many persons contribute, there are, perhaps (eliminating the question of chance), more persuasive reasons for considering the scheme a lottery than we find here. See *State* v. *Ak-Sar-Ben Exposition Co.* (1929), 118 Neb. 851 [226 N.W. 705, 709]; *State* v. *Lovell* (1877), 39 N.J.L. 458, 462, and *Irving* v. *Britton* (1894), 8 Misc. 201, [28 N.Y.S. 529, 531], where such a pool selling scheme was held to constitute a lottery; also *People* v. *Reilly* (1883), 50 Mich. 384 [15 N.W. 520, 522, 45 Am.Rep. 47], and *Reilly* v. *Gray* (1894), 77 Hun 402 [28 N.Y.S. 811, 815], where the contrary was held.

We have no such pooling scheme presented here, but only individual bets, which defendants must pay to the winners regardless of the amount of money the defendants may have received from other bettors or even though they have received none at all, all bets being on the winning horse. ■ As the

court said in *Commonwealth* v. *Kentucky Jockey Club, supra,* (1931), 238 Ky. 739 [38 S.W.2d 987, 994], "Gaming, betting, and lotteries are separate and distinct things in law and fact, and have been recognized consistently as calling for different treatment and varying penalties. The distinctions are well developed, clearly marked, and in most instances rigidly maintained." In other cases already cited, the courts have referred to other laws prohibiting betting or bookmaking as indicating an intention to distinguish between such matters and lotteries. (*Reilly* v. *Gray, supra; People* v. *Reilly, supra.*) In this state the same distinction may well be drawn. In Penal Code, section 337a, enacted in 1911, there is a very complete prohibition of bookmaking and pool-selling on races, contests and matters of chance, and of betting on races and other contests. This section was first enacted in 1909, and while then not so extensive as now, it prohibited bookmaking and pool-selling on races, contests and matters of chance. If all these matters were already covered by the code sections against lotteries, which had been in the code since its enactment in 1872, it would not seem necessary to cover them again by these sections. But however that may be, the enactment of these special sections shows an intent to discriminate between lotteries on the one hand, and betting, bookmaking and pool-selling on the other, and is quite consistent with our conclusion here that the complaint fails to show that defendants were running a lottery.

The judgment is affirmed.

Bishop, J., and Kincaid, J., concurred.