

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

November 30, 1948

Hon. Homer Garrison, Jr., Director
Department of Public Safety
Camp Mabry
Austin, Texas                    Opinion No. V-727.

Re: Whether plan to make up
"purse" for midget auto
races from entrance fees
of drivers and participa-
tion by driver's friends
and fans is illegal.

Dear Col. Garrison:

Your letter of September 24, 1948, outlines
a plan to conduct midget auto races, and to award and
distribute purses to those posting and contributing to-
ward the entrance fees of drivers in the race. We are
asked whether the plan is contrary to the penal laws of
the State.

The proponents are constructing a stadium to
seat approximately 12,000 persons, and desire to attract
outstanding drivers by the offer of a large "purse" or
prize for winning drivers. They propose to charge a
$500.00 entrance fee of each driver, which will go into
the exhibitors' fund for the sole purpose of increasing
the "regular" purse, which represents 40% of the gate
receipts. Drivers will be permitted to "sell" a por-
tion of the entry fee to "friends" and "fans" in cases
where a driver does not have sufficient funds to post
the full fee, or for other reason does not desire to
do so. Those buying interests, or so contributing, will
participate in proportion to their interest in the added
purse, if their man places first or second. They will
not participate in the "regular" purse, made up of a per-
centage of the gate receipts. The proponents will set
up "drivers' quarters" for the convenience of the friends
of the drivers who wish to purchase a portion of the fee
not purchased by the driver. The driver, or his agent,
will collect the winnings and disburse them to the inter-
ested parties. If the driver posts the full fee, there
will be no further distribution of his winnings.

Article 652a, Vernon's Penal Code, provides, in part, as follows:

"Section 1. Any person who takes or accepts or places for another a bet or wager of money or anything of value on a horse race, dog race, automobile race, motorcycle race or any other race of any kind whatsoever, football game, baseball game, athletic contest or sports event of whatsoever kind or character; or any person who offers to take or accept or place for another any such bet or wager; or any person who as an agent, servant or employee or otherwise, aids or encourages another to take or accept or place any such bet or wager; or any person who directly or indirectly authorizes, aids or encourages any agent, servant or employee or other person to take or accept or place or transmit any such bet or wager shall be guilty of book making. . .

"Sec. 4. Any owner, agent, lessor or lessee of any real or personal property who shall knowingly use or knowingly permit such property to be used in connection with book making, as such term is herein defined, shall be guilty of a felony and upon conviction shall be punished as set forth under Section 1 of this Act.

"Sec. 5. It shall be unlawful for any person or the agent, servant or employee of any person, corporation or association of persons, knowingly to furnish telephone, telegraph, teletype, teleprint or radio service or equipment; or to place the same on any property in this State used for the purpose prohibited by this Act or to assist in the violation of any of the provisions of this Act by furnishing of any telephone, telegraph, teletype, teleprint or radio service or equipment. It shall also be unlawful for any person or association of persons or corporations knowingly to permit any telephone, telegraph, teletype, teleprint, radio or other means of communication whatever to remain on any property used for the purpose prohibited by this Act. . ."

Article 652a makes "book making" on automobile races a felony. Betting and wagering, thereon, are not there prohibited, but acting for someone else, aiding someone else, encouraging someone else, in making such bet or wager on a race, and offering to take, accept or place such a bet for another are prohibited. Knowingly permitting the use of property in connection with such activities is also prohibited. Under this Article, no one may act as any sort of intermediary, or employ intermediaries, or otherwise facilitate, aid or encourage others in making such bets or wagers, nor may he offer to take such a bet or wager for another.

The test of illegality under this Article, regardless of what is actually intended under the plan, is whether betting and wagering by anyone will in fact be facilitated, aided, or encouraged by some or all of those engaging in or furnishing facilities and services to the enterprise. Obviously, no hypothetical outline of such an enterprise can state or even anticipate all of these things, and we must necessarily decline to venture an opinion that the law will not or cannot be violated thereunder. We will not do so. The tendencies are quite apparent, and violations of the law are possible and even probable.

We have found no statute prohibiting betting as such upon automobile races. It is "book making" which is prohibited. Before the offense of book making can be committed, however, there must be a bet or wager involved, or at least the tender or offer of a bet or wager.

There is no question but that where two or more contestants contribute sums of money making up a fund which is to belong to the winner of the contest, the agreement or transaction is a bet or wager. Equally certain it is that for two or more persons to contest for a prize offered by one not a contestant, the agreement or transaction is not a wager. 27 C. J. 1051. The question here is: Where both the contestants and the exhibitor contribute sums of money toward prizes, is the transaction a bet or wager as to either the contestants or the exhibitor? On the face of the statement, it would appear that the money contributed by the contestants would constitute a stake or wager, while that contributed by non-contestants is a mere prize.

But, the solution is not as simple as all that. If the contribution by the contestants does not go immediately and directly to the purse or prize, it may not in fact be a bet or wager. For example, where a racing association offers a prize to the winner but charges an entrance fee for the right to participate, the entrance fee going into the funds of the association from which the expenses of maintaining the track and quarters are paid in addition to the making up of a prize, there is missing the necessary identity of the entrance fee as a part of the purse or prize; and, without more, it cannot be said that the entry fee is not in fact charged to offset the expense of such maintenance and is not paid solely for the privilege of entering the contest. This appears to have been the basis for the decisions in a number of cases that the mere fact that entrance fees are paid by contestants, which fees go into or increase the purse or prize offered by the exhibitors, of the race, does not make an entry fee a bet or wager, or the purse or prize a stake. As we see it, all of the facts and circumstances surrounding the particular transaction are necessary to determine the character of the transaction as being a bet or wager. It cannot be said, on the other hand, that because of the mere fact that the contestant's contribution is called an "entrance fee", the transaction is not in fact a bet or wager. The cases also bear this out, some by express language and others by necessary implication.

In Toomey v. Penwell, 76 Mont. 166, 245 Pac. 943, 45 A.L.R. 993, a leading case on the subject, the Court denied recovery from a State Fair Association, under a statute authorizing recovery of losses in a wager, of the sum of $2.00 paid by a contestant for the right to enter a horse in a race for a purse of $375.00, on the theory that the fee was not shown to be a bet or wager under a statute prohibiting betting on contests of the like. The purses were definite amounts plus amounts "equal to" the entrance fees paid in each race. The Court quotes 27 C.J. 1051 to the effect that where the entrance fee does not specifically make up the purse, the mere fact that the purse is made up partly of fees and in part of an added sum does not make the contest a wager. The Court said:

"The reason for the rule is apparent. When plaintiff paid the entrance fee, he received the adequate consideration for it - the privilege of having the horse 'Florence Fryer' participate in the race. He parted with the title to the money and the $2 at

once became the property of the Fair
Association, and a part of its general
funds, which it could use to pay prem-
ium in whole or in part, to defray or-
dinary expenses, or for any other lawful
purpose." (Emphasis supplied)

That the particular facts of any given case could change
the result is illustrated by the language immediately
following the above quotation:

"But these observations and the au-
thorities cited have to do with bona fide
transactions, and not with gambling so
clearly disguised as to appear to be what
it is not. They are predicated upon the
theory that the so-called entrance fee is
an amount of money actually paid uncondi-
tionally and in good faith for the privi-
lege of entering the contest, and for no
other purpose. If in fact the fee is not
paid for such purpose; but is merely post-
ed upon the outcome of the contest, no
amount of dissembling can save the trans-
action from the condemnation of our anti-
gambling statute." (Emphasis supplied)

Authorities referred to in addition to Corpus
Juris are: Morrison v. Bennett (Mont.), 40 L.R.A. 158,
containing dictum to the effect that offering prizes on
horse races is not contrary to public policy where the
purse is offered in good faith and not as a subterfuge
for betting and gaming; Porter v. Day, 71 Wis. 296, 37
N. W. 259, recognizing that where the prize is a mere
subterfuge for betting and gaming it is prohibited; Har-
ris v. White, 81 N. Y. 532, recognizing that an entrance
fee would be a bet if it went "immediately" to make up
the purse contested for, instead of going into the gen-
eral funds of the association; and Hankins v. Ottinger,
115 Cal. 454, 47 P. 254, 40 L.R.A. 76, where the entrance
fee was admittedly not paid as a wager or bet, but for
the privilege of entering the race.

On the other hand, in Gibbons v. Gouveneur, 1
Denio 170, where the money paid by the contestants was
for the express purpose of making a stake to be contest-
ed for, and for no other purpose, and with the previous
agreement that the very sums thus paid should form the
stake, and to go, the whole of it, to the winner of the
race, constituted betting and wagering.

In Stoddard v. McAuliffe, 81 Hun. 524, 31 N.Y.S. 38, affirmed by memorandum, 151 N. Y. 671, 46 N. E. 1151, a club put up a prize of $4,000.00, and two prize fighters put up an additional $1,500.00 each, all to go to the winner. This was held to be a bet or wager within the statute.

In Porter v. Day, supra, the Court said:

"If two or more men owning trotting horses should contribute equally or otherwise a sum of money, and put it into the hands of some other person for the purpose of offering it as a premium or reward to them only, and to the owner of the horse who should win the race, such a transaction would undoubtedly come within the rule which prohibits betting on a horse or other race." (Emphasis supplied)

In Dudley v. Flushing Jockey Club, 14 Misc. 58, 35 N.Y.S. 245, a statute authorizing participants in a horse race to join in furnishing the stake or purse was held to be an attempt to legalize the wager in contravention of a constitutional provision against pool selling, book making and gambling.

In the plan before us, the entry fee is for the express purpose of making a "purse" to be contested for, and for no other purpose, and with the previous agreement that the very sums thus paid should form an added purse, to go, the whole of it, to the winning drivers. It constitutes a bet or wager.

There is no distinction in principle between the plan and the playing of pool, the winner to pay the fees charged for use of the table, condemned as betting in Mayo v. State (Tex. Crim.), 82 S. W. 515.

The participation of "friends" and "fans" is to be tested by like principles. In Coulter v. State, 53 S. W. (2d) 477, where options were sold and redeemed on horses entered in races, the Court of Criminal Appeals held, in effect, that where the mutual understanding of the parties to the transaction was that, dependent upon the result of the horse race, the money invested in the options would be lost or increased, the transaction constituted betting on a horse race. The Court cites State v. Falls Cities Amusement Co., 124 Ohio St. 518, 179 N.E.

405, 408, 79 A.L.R. 568, and Pompano Horse Club et al. v. State of Florida, 93 Fla. 415, 111 So. 801, 812, 52 A.L.R. 51. From the latter, it cites the following:

"... when a group of persons, each of whom has contributed money to a common fund and received a ticket or certificate representing such contribution. adopt a horse race, the result of which is uncertain, as a means of determining, by chance, which members of the group have won and which have lost upon a redivision of that fund, each contributor having selected a stated horse to win such race, the redeemable value of the certificates so obtained and held by the contributors to such fund being varied or affected by the result of such race, so that the value of some is enhanced, while that of others is reduced or destroyed... those who chose the winning horse being paid from the fund so accumulated more than they contributed thereto, by dividing amongst them the money contributed by those who chose losing horses and who therefore receive nothing, that process becomes a 'game of chance'."

The definition of "bet or wager" is taken by the Court from Rich v. State, 38 Tex. Cr. R.199, 42 S. W. 291, 292, 38 A.L.R. 719 as:

"Ordinarily an agreement between two or more that a sum of money, or some valuable thing, in contributing which all agree to take part, shall become the property of one or more of them, on the happening in the future of an event at the present uncertain ..."

The plan contemplates such a transaction on the part of drivers, his friends and fans. The plan is not distinguishable in principle from those considered in Opinion No. 0-1704 of the Attorney General of Texas, where purses were made up by entry fees in a dog race; Wellston Kennel Club v. Castlen (Mo.), 55 S. W. (2d) 288, considering a method of subscribing to purses; State v. Feak, 60 Ohio App. 223, 20 N. E. 534. considering an option method; Reinmiller v. State, 93 Fla. 415, 111 So. 801, 52 A.L.R.51, considering a method of "investing" in

the "earnings of a dog"; Oklahoma Kennel Club v. State, 155 Okla. 233, 8 P. (2d) 753, considering a "donation" plan; Ex parte McDonald, 86 Cal. App. 362, 260 P. 842, considering another "contribution" system; and State v. AK - SAR - BEN Exposition Co., 118 Neb. 851, 226 N. W 705, considering a plan to distribute amounts in excess of regular purses and expenses to those contributors thereto who picked winners.

You are respectfully advised that the plan contravenes Article 652a, Vernon's Penal Code.

### SUMMARY

$500.00 entrance fee charged midget auto drivers for the sole purpose of making up or increasing the purse offered to the winner by the exhibitor is a "bet or wager", and sponsoring such arrangement constitutes "book making" under Article 652a, V. P. C. Contributions to such entrance fee by others in exchange for an interest in drivers' winnings are "bets or wagers", and sponsoring such activity constitutes "book making" under the same Article.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Ned McDaniel*

Ned McDaniel
Assistant

APPROVED:

*Price Daniel*
ATTORNEY GENERAL.

NMc:jmc